LEE v. WYSONG et al.

(Circuit Court of Appeals, Fifth Circuit. April 5, 1904.)

No. 1,307.

1. PARTITION—NATURE OF ACTION—TITLE TO SUPPORT.

Where a proceeding for partition is one at law, in which questions of
title may be tried, as it appears to be under the law of Texas, on the trial
of such an action in a federal court the legal title must prevail.

2. VENDOR AND PURCHASER — UNRECORDED INSTRUMENT — BONA FIDE PUR-
CHASER.

Certain tracts of land in Texas were conveyed to two individuals, who
were at the time partners. In 1853 an act of sale was executed by one
partner to the other, in New Orleans, covering all his interest in the
partnership property, "consisting of the stock in trade * * * real
estate taken by the said firms from their debtors in settlement of their
debts and situate in the states of Mississippi and Texas. ** * *" Such
instrument was not sufficient as a conveyance of lands under the laws
of Texas, nor was it recorded in that state. In 1901 the sole heir of the
partner executing such instrument, through an attorney in fact, sold and

128 F.—53

conveyed an undivided half interest in the Texas lands, for a valuable consideration, to plaintiff's grantor; neither such purchaser nor plaintiff having any knowledge of any adverse title or claim. Rev. St. Tex. art. 4640, provides that an unrecorded conveyance shall be void as against a purchaser for value without notice. *Held*, that plaintiff acquired the legal title to the land, as well as the superior equity.

3. SAME—ACTION TO TRY TITLE—EVIDENCE.

In an action at law to determine the title to the land, the act of sale was not admissible as an evidence of title, since, at most, it conveyed merely an equitable right, and where there was, moreover, no satisfactory proof that the lands in question were ever the property of the partnership, or that they were obtained from debtors.

4. DEED—CONSTRUCTION—CONVEYANCE TO PARTNERS.

A deed of lands to two persons as individuals on its face conveys to each an undivided half interest, and no presumption arises that the lands are partnership property, even where it is shown that the grantees were partners in a mercantile business.

5. VENDOR AND PURCHASER—TITLE ACQUIRED—BONA FIDE PURCHASER.

Where plaintiff in an action at law to determine the title to lands pleads a legal title, and proves conveyances which on their face vest the title in him, and defendants set up a claim under a prior unrecorded conveyance from a common source of title, which, under the laws of the state, is void as against subsequent bona fide purchasers for value, without notice, evidence is admissible in rebuttal to show that plaintiff was such a purchaser; such evidence not tending to establish an equitable title, but being in support of plaintiff's legal title.

In Error to the Circuit Court of the United States for the Southern District of Texas.

L. B. Moody and G. H. Pendarvis, for plaintiff in error.

Kittrell & Kittrell and Hume & Hume, for defendants in error.

Before PARDEE, Circuit Judge, and SPEER and NEWMAN, District Judges.

SPEER, District Judge. This is an action for partition of lands. It was filed by the plaintiff, R. I. Lee, in the district court of Harris county, Tex., against the unknown heirs of John R. Marshall. Cited by publication, the defendants made appearance, whereupon the plaintiff amended his petition, and the case proceeded against them. Plaintiff is a citizen of Kansas, the defendants are citizens of New York, and the cause was duly removed to the Circuit Court of the United States for the Southern District of Texas, and entered upon the law docket. Simultaneously with the removal the defendants filed their original answer, which presented a general demurrer and a general denial of plaintiff's title. Thereafter the defendants also filed a special plea denying that the plaintiff had any title to or interest in the land sued for, and alleged that the defendants were the sole owners of all the lands, and prayed judgment to that effect. When the cause came on to be heard, a stipulation in writing was made by opposing counsel waiving a jury, and submitting the case, upon the law and facts, to the court.

It appeared from the evidence that the title to this land had originally vested in one A. M. Gentry. This he took as the assignee of certain patents to Jones, to Menifee, to Sanders, and to Jeffries. There is no

dispute as to the title of Gentry. He made four separate deeds to John R. Marshall and A. B. James, conveying to them, for various considerations, four different tracts of this land, "to have and to hold unto the said Marshall and James their heirs and assigns." The plaintiff and the defendants both claim title from John R. Marshall and A. B. James, or Marshall & James, and it follows that there is no dispute with regard to the antecedent title. When, however, we pass Marshall & James, the controversy appears. The plaintiff proved that Amadee De Gasquet James is the sole heir of A. B. James, of the late copartnership of Marshall & James, and that the defendants Martha M. Wysong, Louise M. Pollock, and Marie Marshall were the sole heirs and devisees of John R. Marshall, the other member of the copartnership of Marshall & James, and also sole heirs and devisees of his wife, namely, Eviline Marshall. It appears further from the evidence that on the 25th of August, 1897, Amadee De Gasquet James made a power of attorney authorizing one John McDougall, for James and in his name to ask, demand, sue for, and recover for him all lands in Texas to which he was entitled by inheritance, purchase, or otherwise. The same instrument authorized McDougall to make deeds of conveyance or other instruments, receiving and receipting for the consideration thereof, and also conveyed to McDougall an undivided half interest in and to all such lands. Acting under this power of attorney, McDougall, as attorney in fact for James, made a deed on August 19, 1901, conveying to J. H. McMorrow an undivided half interest in the lands described in the plaintiff's petition. This deed recited a consideration of $4,320, and contained a clause of general warranty. It was recorded September 21, 1901, in the record of deeds of Harris county. McDougall, in his individual capacity, on August 25, 1901, made a quitclaim deed to J. H. McMorrow of all of his right, title, and interest to this land. This deed recited a consideration of $10, and contained a clause of warranty against the grantor's heirs and all persons claiming under him. This was also recorded in Harris county on September 21st of the same year. McMorrow, now having in this way all the title which had previously vested in Amadee De Gasquet James, on the 24th of September, 1901, conveyed to R. I. Lee an undivided one-half interest in and to the land sued for. This was for a consideration of $4,800. It contained a clause of general warranty, and was recorded in the same county on September 26, 1901. This R. I. Lee is the plaintiff, and he, having introduced this evidence, rested his case.

The defendants then put in the same deeds from Gentry to Marshall & James which had been previously introduced by the plaintiff. They then offered a copy of a notarial act of sale passed June 14, 1853, before Theodore Guyal, a notary public for the parish of Orleans, state of Louisiana. This instrument was duly exemplified in accordance with the statutes of the United States. From this it appears that A. B. James, for the consideration of $205,000 paid to him by John R. Marshall, and said Marshall's assumption of and agreement to pay all of said James' liabilities as a member of three several firms of Marshall & James, therein described, and to hold him harmless and indemnified from and against all debts, obligations, and liabilities of whatsoever na-

ture and kind on account of said firms, grants, sells, conveys, transfers, and assigns—

"Unto John R. Marshall, present and accepting, and purchasing for himself, his heirs and assigns, all and singular the rights, title, interest, property, claim and demand of every kind and nature whatsoever of him, the said Andrew B. James, as a copartner in the two firms formerly existing and the one now existing in this city, and in the City of New York, under the name and style of Marshall & James, and composed of the said John R. Marshall and Andrew B. James, of, in and to, the property, effects and assets of the said firms, wheresoever situate and in whose possession and keeping soever the same may be, and consisting of the stock in trade, book debts, accounts, bills receivable, claims, real estate taken by the said firms from their debtors in settlement of their debts and situate in the States of Mississippi and Texas, and generally every other thing belonging to said firms and accruing to them in any manner or form, without any reservation whatsoever, and also any and all capital and balances this day standing to the credit of the said Andrew B. James on the books of the said several firms."

The act of sale recites the periods of the three firms, all styled Marshall & James, and composed of John R. Marshall and A. B. James. The first commenced July 1, 1845, and terminated July 1, 1848, and in this the partners held equal interests. The second commenced July 1, 1848, and terminated July 1, 1850, and in this James' interest was seven-sixteenths, and Marshall's was nine-sixteenths. The third commenced July 1, 1850, and was existing when the act of sale passed, June 14, 1853, and in this James' interest was 38¾ per cent., and Marshall's was 61¼ per cent. It appears that an exemplified copy of this act of sale had been filed for record in the office of the county clerk of Harris county on January 6, 1902, and recorded February 3d of the same year; but the defendants did not offer it for that reason, which, it was agreed, added nothing to its validity. To this copy act of sale the plaintiff objected because it was not admissible without proof of execution of the original; again, because it purported to dispose of the partnership assets of Marshall & James, and there was no evidence that the lands in dispute were a part of those assets; and for the further reason that it contained no description of the lands in controversy; also since, even if operative, it conveyed only an equitable title, and, in the absence of evidence that he had notice of such equitable title at the time he purchased the lands described in his petition, or in the absence of evidence that he did not pay a valuable consideration therefor, could not affect the rights of plaintiff, holding the legal title. The court overruled these objections, and admitted the exemplified copy in evidence, and to this the plaintiff excepted. The defendants then put in evidence a duly examined copy of said act of sale, made and proved by a witness who tested the accuracy of the copy of the original in the archives and records of the custodian of notarial records in New Orleans, and who testified that it was a true copy of the original. The contents of the examined copy are the same as those of the exemplified copy hereinbefore mentioned. The defendants then proved that the firm of Marshall & James paid taxes for the year 1853 on the lands sued for, and all back taxes which had accrued and remained unpaid from 1850 to 1853, and further that John R. Marshall, individually, as long as he lived, and after his death his estate, paid all taxes on

said lands from and including the year 1854 to the year 1901, and that in 1860 John R. Marshall redeemed one tract of said land, namely, the Sanders tract, from a sale made to the state for taxes due thereon for the year 1848, and also paid taxes due on said tract for the year 1849. The defendant introduced no other evidence. The plaintiff then called J. H. McMorrow and J. H. O'Donnell, and offered to prove by them that his vendor, J. H. McMorrow, had no notice at the time he purchased said lands of the existence of said act of sale of June 14, 1853, and that he was a subsequent purchaser for a valuable consideration. The defendants objected to this testimony for the reason that the plaintiff's action was at law, and that this evidence was cognizable only in equity, and again that the plaintiff had not pleaded, and therefore could not prove, that his vendor purchased said lands for a valuable consideration, and without notice of said act of sale. The court permitted the witnesses to be examined, reserving its ruling upon the objections. The defendants then offered testimony of certain other witnesses, which, however, does not appear material. The court took the cause under advisement, and finally sustained defendants' objections to the plaintiff's contention that his vendor was a subsequent purchaser for a valuable consideration, without notice of the unrecorded act of sale from A. B. James to J. R. Marshall, admitted the act of sale over plaintiff's objection, and thereupon made a final and general finding of the facts and the law for the defendants, to which ruling and finding the plaintiff excepted. Thereupon the court rendered judgment against the plaintiff, that he take nothing by this suit, and in favor of the defendants, that they go hence without day, and that the defendants have and recover costs, etc.

The proceeding for partition, by which it is attempted to try questions of title before the court, was treated by opposing counsel—all accomplished members of the Texas bar—as unquestionably appropriate under the law of. Texas. We have the authority of Chancellor Kent for stating that the writ of partition, as enacted by St. 31 & 32 Henry VIII, has been gradually re-enacted and adopted, with probably enlarged facilities for partition, in the United States. Further, it does not appear that the question of possession entered into this controversy; otherwise a disseisin or adverse possession might, under the general rule, bar a suit for partition so long as the ouster continued. 4 Commentaries, p. 364, footnote. For a discussion of the subject, see Bearden v. Benner (C. C.) 120 Fed. 690. We assume, then, that it is competent to adjudicate the conflicting titles upon the proceeding before the court. The cause, when removed, proceeded without objection on the law side in the circuit court. The issues presented and passed upon were legal issues, the case submitted here presents only issues at law, and it follows that, on this writ of error, we are restricted to considerations depending upon the legal title. This, it appears, must be resolved in favor of the plaintiff in the court below, who is the plaintiff in error here. All the conveyances of the land described in the petition, from Gentry, who had succeeded by assignment to the title of the original patentees, placed the title, not in the partnership firm, Marshall & James, but in John R. Marshall and A. B. James. About this there can be no question. The deeds are explicit; the

descriptions of the land, definite and precise. It is equally unquestionable that Amadee De Gasquet James was the sole heir of A. B. James, and that the defendants Martha M. Wysong, Louise M. Pollock, and Marie Marshall are the sole heirs and devisees of John R. Marshall and of his wife, Eveline Marshall. There is also no question that an undivided half interest in these lands belonged to these successors in title of John R. Marshall. It is the disputed claim of the plaintiff, the successor in title of Amadee De Gasquet James, the sole heir of A. B. James, which must be determined. Now, Amadee De Gasquet James, it appears from the evidence, duly empowered one John . McDougall to recover for him all lands in Texas to which he was entitled, and to convey the same; also, doubtless in consideration of these services of McDougall, an undivided half interest in the lands thus recovered was by the same instrument secured to him. McDougall, pursuant to the power of attorney thus granted, sold the undivided half interest of Amadee to J. H. McMorrow. It is claimed, and not disputed, that he was paid therefor the sum of $4,320. McDougall also sold his own interest to McMorrow, and conveyed this, as it appears, by a quitclaim deed, only warranting title against his own grantor's heirs and all persons claiming under him. McMorrow, now having bought and paid for the title, conveyed it to Lee, the plaintiff. This party appears from the evidence to be a capitalist dwelling in Kansas, whose business is largely to deal in lands. The deed to Lee recited a consideration of $4,800, and contained a clause of general warranty.

From this summary it appears that the plaintiff had purchased the legal title to the undivided half interest which formerly belonged to A. B. James. It follows that this title must prevail, unless it appears that, conformably to law, by legal and sufficient conveyance, it has been diverted to the defendants, or to some other person or persons. It is attempted to show this first by the contention that these lands were partnership property of Marshall & James. The evidence, however, is not at all clear or satisfactory to justify this conclusion. The conveyance from Gentry to J. R. Marshall and A. B. James, while made to them jointly, was not made to them as partners. It would probably have created a joint tenancy at common law. This, by the same law, even though such real estate might have been held by the joint tenants as partners, would have been subject to the right of survivorship. The right of survivorship among joint tenants has, however, been abolished in many states, except as to estates held in trust. In most of the United States the presumption is that all tenants who hold jointly hold as tenants in common, unless a clear intention to the contrary be shown. A tenancy in common is defined to be an estate held in joint possession by two or more persons at the same time, by several and distinct titles. 1 Washburn's Real Property, p. 415; 2 Blackstone, p. 191. There is in common tenancy a unity of possession, but no unity of title. It cannot, we think, be presumed that, because Marshall & James were members of the partnership of that name, a conveyance of real estate to John R. Marshall and A. B. James deposited the title among the partnership assets. There is, as before stated, no ambiguity about the deeds. The conveyance to the grantees was to them as individuals. It will, of course, be presumed that each took an undivided half interest. It is

clear that a deed from A. B. James conveying an undivided one-half interest in this land to a purchaser who had no knowledge of the title, save that conveyed by the deeds from Gentry, would have passed the title to such purchaser. While the right of Amadee De Gasquet James, the heir of A. B. James, would, perhaps, not be as incontestable as that of an innocent purchaser, yet, in the absence of any proof that this was partnership property, he would succeed at law to the distinct and separate title of his ancestor. It is, however, contended that A. B. James, by the act of sale, admitted in the Circuit Court, conveyed these lands to his partner. This we are clearly of the opinion is not maintainable. In the first place, there is no sufficient proof of the execution of that instrument as a conveyance of land in Texas. But if proof of execution was sufficient, how can it be said that the general designation, "all stock in trade, book debts, accounts, bills receivable, real estate taken by the said firms from their debtors in settlement of their debts and situated in the States of Mississippi and Texas and generally every other thing belonging to said firms or accruing to them in any manner or form without any reservation whatever," was a sufficient conveyance of the distinct title of A. B. James in the lands in dispute? As we have seen, there is no evidence that these lands were partnership property, except that the partnership paid taxes thereon. The only real estate conveyed by this act of sale was that "taken by the said firms from their debtors in settlement of their debts." However much we may surmise, this does not amount to a conveyance of distinct parcels of land standing in the name of A. B. James. Such a conveyance to the predecessor in title of one party is so indefinite that it cannot defeat the legal title in another. If, moreover, this act of sale is treated as effective to convey anything at all, it can be merely a right to establish by a suitable proceeding in equity an inchoate or equitable title. The plaintiff, however, in that view, would have an opposing equal, if not superior, equity. This act of sale was not recorded at the time of the plaintiff's purchase. It is clear that he had no knowledge of its existence, but paid a valuable consideration for the land, and bought in good faith. His is therefore the equity of a bona fide purchaser without notice. Conceding, arguendo, then, the existence of the inchoate and very indefinite equity of the heirs of Marshall, the equity of Lee cannot be disregarded. Where equities are equal, the law will prevail, and Lee has the legal title. But these equities are not equal. Lee has done all that the law required him to do. He took deeds clearly describing the land. He recorded them in time. He put the world on notice of his dealings with the land in dispute. The predecessors in title of the defendants were content to rely upon vague generalities in description, to leave in doubt whether the interest in dispute was partnership property or not, to execute an instrument not in itself sufficient at the time to convey title to land in Texas, and then to fail or refuse to record it. A court of equity, under the circumstances, would not, we think, hesitate to impose the loss which must fall on one or the other of these parties on those who are slothful, indifferent, or disregardful of the law, or who claim under those whose conduct was so lacking in that vigilance and attention to the rights of others which is exacted by courts of equity. But under the law of Texas, which

must control our action in this case, the right of the plaintiff is even stronger. An innocent purchaser from the heir takes the estate as against an unrecorded deed from the ancestor. Holmes v. Johns, 56 Tex. 41. The statutes of the state of Texas provide that an unrecorded conveyance shall be void as against a purchaser for value without notice. Rev. St. Tex. 1895, art. 4640; De Guire v. St. Joseph Lead Company (C. C.) 38 Fed. 65. It would seem, therefore, that the evidence offered to show that the plaintiff's vendor purchased the lands in controversy for a valuable consideration, without notice of the unrecorded conveyance from James to Marshall, was offered in support of the distinct legal right created by the policy of the state with reference to this question. The contention that the plaintiff should have specially pleaded, setting up his rights as a bona fide purchaser without notice of the unrecorded act of sale, seems to be equally unmaintainable. The proceeding for partition here is a statutory remedy. It possesses the requisites prescribed by the statute. Rev. St. Tex. 1895, art. 360. The proof of the plaintiff's equity as a bona fide purchaser, without notice of the unrecorded and insufficient act of sale, was not a part of his evidence in chief, of which the defendants were entitled to notice by suitable averments. It was in rebuttal and reply to the proof of defendants offered under the general denial.

For these reasons, we are of opinion that the Circuit Court was in error in admitting the act of sale, and in excluding the evidence of O'Donnell and McMorrow to show that the plaintiff had no notice of the existence of the act of sale at the time that he purchased the disputed interest, and that he was a purchaser in good faith for a valuable consideration, and in giving judgment for the defendants. Judgment of the court below is therefore reversed, and the cause will be remanded to the Circuit Court for its suitable action pursuant to this decision.