## ADAMS v. TEXHOMA OIL & REFINING CO.
### (No. 2327.)

(Court of Civil Appeals of Texas. Amarillo. May 14, 1924.)

**1. Joint-stock companies and business trusts ⊙⟶15(1)—Stockholder held not liable on account arising after transfer of stock.**

Former stockholder of joint-stock association, management of which was vested exclusively in board of directors, of which he was not member, *held* not liable on account arising after he sold his stock, though it was not transferred on books as required by certificate, in absence of showing that creditor knew of and relied on his membership when credit was given, being dormant partner, who need give no notice of retirement to free himself from liability in respect to subsequent acts.

**2. Joint-stock companies and business trusts ⊙⟶15(1)—Transfer of stock without entry on books valid against creditors not extending credit on faith of membership of transferor.**

Provisions of certificate of stock in joint-stock association that it can be transferred only on association's books by holder or agent does not restrict stockholder's right to transfer stock, so as to invalidate transfer not made on books as against creditor not extending credit because of facts appearing therein.

**3. Mines and minerals ⊙⟶99(1)—Right of co-owner of mine to sell share to third person stated.**

Generally co-owners of mine are partners only in profits, and mine itself is owned by them as tenants in common, each of whom may sell his share to third person without consent of co-owners and without dissolving partnership; mining partnerships being similar to joint-stock company, in that there is no delectus personæ, because of which one partner can

bind another by his act or contract, as in case of ordinary trading partnership.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by the Texhoma Oil & Refining Company against W. B. Adams and another. Judgment for plaintiff, and defendant Adams appeals. Reversed and rendered as to appellant.

Fitzgerald & Hatchitt, of Wichita Falls, for appellant.

W. B. Hamilton, of Dallas, and G. R. Pate, of Wichita Falls, for appellee.

HALL, C. J. This suit was brought by Texhoma Oil & Refining Company against the Victor Refining Company, a joint-stock association, and various individuals, including appellant W. B. Adams, who are alleged to have been stockholders at the time the cause of action sued upon accrued. The petition is based upon an itemized account for gas, materials, and supplies sold to the defendants between April 30, 1921, and January 31, 1922, aggregating $6,289.49. Plaintiff prays for judgment for the amount of its account and interest at 6 per cent. He answered by general denial and a sworn plea denying partnership, alleging that he in good faith sold his stock in the association on the 7th of January prior to the time the account commenced to run in April. The case was tried to the court without a jury, resulting in a judgment in favor of plaintiff against all the defendants, jointly and severally.

The court filed findings of fact. Such as are material to the propositions urged here are as follows: That Adams purchased 150 shares on December 31, 1920; that his certificate contains the following recital:

"This is to certify that W. B. Adams is the owner of one hundred and fifty fully paid shares of beneficial interest in the Victor Refining Company, a joint-stock association, transferable only on the books of the company by the owner thereof in person, or by duly authorized attorney upon the surrender of this certificate properly indorsed. * * * No member of said company, owner or holder of this certificate as such, shall have any authority, power or right whatsoever to do or transact any business whatever for or on behalf of or binding on the company or any member thereof. * * * This certificate shall be the sole and only evidence of membership in said company."

The court further found that the affairs of the association, under its articles, should be conducted, managed, and controlled exclusively by its board of trustees; that W. B. Adams had nothing whatever to do with the activities of the association, and that the plaintiff company did not know of his membership therein at the time the obligation sued upon arose; that the defendant Adams, for a valuable consideration in due course of trade, sold and assigned his shares of stock on January 4, 1921, to one O. K. Herndon, at which time he delivered the certificate to Herndon with his indorsement and transfer in blank thereon, after which time he never owned any interest in the company, but that no transfer on the stock book was made, and that the shares stood in his name on the books as originally issued; that W. B. Adams never at any time held himself out to the plaintiff as a member of the Victor Refining Company, except by allowing the stock book to show his ownership of the shares; that he never at any time participated in the business affairs of the company; that no part of the account accrued prior to April 30th thereafter. The court concludes as a matter of law that the Victor Refining Company was a copartnership; that the active members were the trustees and officers of the company; that the other stockholders were partners and as such became liable to the plaintiff for the debt sued on; that Adams is liable with all the other members for the reason that the stock was not transferred on the books of the company but remained in his name at the time the liability of the company attached, and that the plaintiff, as a creditor, had the right to conclude that they were dealing with the persons who appeared to be members of the partnership on the stock register.

[1] According to the court's findings, credit was not given to the association because Adams was a stockholder, and in order to bind him plaintiff must have known of the fact of his membership and relied thereon in order to hold Adams under the circumstances shown by the record. In other words, there must be an element of estoppel, which does not exist in this case. Norwood v. Francis, 25 App. D. C. 463, 472, 4 Ann. Cas. 865. The active management and conduct of the affairs and business of the association was vested exclusively in the board of directors. Adams was not a member of the board, and there is nothing to show that he even had any voice in the selection of the members of this board. By the terms of his certificate of stock, he was shorn of all authority to bind the association or any member thereof by anything he might do or say. It was stipulated that his certificate of stock was to be the sole and only evidence of his membership, and the certificate was his private property. It does not appear that his name was signed to the articles of association or that there was any public record made of such articles. While he was, in a sense, a partner, nevertheless, under the peculiar circumstances disclosed by the record, he was a dormant partner and his relation to the association and to third parties is correctly defined by George on Partnership, as follows:

"A dormant partner combines in himself the character of both the secret and silent partners. Whether or not he seeks to withhold from the public the fact that he is a partner, he is not published as one through the firm name or otherwise; but he is one nevertheless although by mutual agreement of all the partners he does not transact any of the business of the firm. * * * He may be said to be always at the mercy of others in respect to being subjected to the payment of debts which he, but for them, might escape; being liable to be so subjected at any time by his membership in the firm being exposed through accident or design. This secret being once divulged, he is a disclosed principal and liability for firm debts and obligations adheres to him as well under the law of principal and agent as of partnership. But if his connection with the firm is not thus disclosed and he at length ceases to be a partner, knowledge thereafter of the old connection will not avail any one trading with the firm in seeking to fix a liability on him. From this principle the maxim has arisen that 'A dormant partner may retire from the firm without giving notice to the world.'" Pages 95, 96.

"When a dormant partner retires he need give no notice of his retirement in order to free himself from liability in respect to acts done after his retirement. The reason is that as he was never known to be a partner no one can have relied on his connection with the firm or truly allege that when dealing with the firm he continued to rely on the fact that the dormant partner was still connected therewith." Pages 264–265; Lindl. Partn. 212; Grosvenor v. Lloyd, 1 Metc. (Mass.) 19; Baptist Book Concern v. Carswell (Tex. Civ. App.) 46 S. W. 858; Tyrrell v. Washburn, 6 Allen (Mass.) 466; Elmira Iron Co. v. Harris, 124 N. Y. 280, 26 N. E. 541; Savage v. Putnam, 32 Barb. (N. Y.) 420; Id., 32 N. Y. 501; Rianhard v. Hovey, 13 Ohio, 300.

[2] Although the court found that Adams had, in good faith, sold his stock more than four months before the account sued upon arose, he concluded as matter of law that Adams was nevertheless liable because his certificate of stock provided that it could be transferred only on the books of the company by the holder in person or his duly authorized agent, and that no such transfer of the stock had been made. The effect of such a provision relative to the transfer of stock upon the liability of stockholders in a joint-stock association or business trust for profit, to its creditors, has not, so far as we know, been decided by the courts of this state. Such a provision, however, as it affects the rights of a stockholder in a corporation, was fully discussed by our Supreme Court in Seeligson v. Brown, 61 Tex. 114, and cited in the notes in 57 Am. St. Rep. 384, 385, and 67 L. R. A. 672. In the Seeligson Case the court held that the by-laws, regulating the transfer of stock, were merely intended for the protection of the interests of the corporation, and no effect should be given to them further than to attain that object; that such a regulation is not restrictive of the stockholder's right to transfer his stock at pleasure, and that such transfer is valid as against an attaching creditor of the vendor who attaches the shares before he or the corporation has notice through its officers. Since the association stock book was not a record which the plaintiff company had the right to inspect, or which had been exhibited to it, and since plaintiff did not extend credit to the association because of any facts appearing in the stock book, we think the rule as applied to corporations in the Seeligson Case is also applicable to unincorporated associations containing a similar provision with reference to the transfer of stock.

[3] As a general rule, in mining partnerships, the co-owners of the mine are partners only in the profits; the mine itself being owned by them as tenants in common rather than as partners. As said in Rowley, Modern Law of Partnerships, § 152:

"The general rules of partnership apply, except where modified by the fact that the common property is held as tenants in common. For instance, as in other cases of partnership, there must be some community of profit and loss. The ownership of the mine as cotenants, however, allows one party to sell his share to a third person without the consent of his co-owners and without dissolving the partnership since the profits follow the property. Since this method of transfer of interests does away with the delectus personæ, there is no relation of trust and confidence and one partner cannot bind the other by his act or contract. * * * Another difference between a mining partnership and an ordinary trading partnership is that the former is not founded upon the delectus personæ while the latter is. Hence one mining partner has not the right to bind his associates to the same extent as the member of a trading partnership. It has been said that a mining partnership is a cross between tenancy in common and partnership proper. It is also true that mining partnerships are similar to joint stock companies to the extent that there is no delectus personæ as above explained. It may be wondered why mining partnerships are to be looked upon as any different from partnerships in any other occupation but it must be remembered that law is unsettled as a rule in mining camps and that habits of miners and their continuous change from one locality to another, together with the nature of the work combine to produce a rule more conformable to mining conditions."

In Id. § 153, it is said:

"Whether a mining partner is liable for the debts incurred by the partnership subject to the sale of his interest depends on the facts of the case and rests practically on the law of estoppel and he may be liable to employees and creditors who do not know of the transfer"— citing Kelley v. McNamee, 164 Fed. 369, 99 C. C. A. 357, 22 L. R. A. (N. S.) 851, 16 Ann. Cas. 299.

Plaintiff did not plead that Adams was estopped to deny his liability, and in our

opinion there is no evidence which would sustain any such plea.

As to the appellant the judgment is reversed and is here rendered in his favor.