## SHELL PETROLEUM CORPORATION v. CAUDLE et al.

### No. 6675.

Circuit Court of Appeals, Fifth Circuit.

Feb. 8, 1933.

Rehearing Denied March 8, 1933.

Pinckney G. McElwee, of St. Louis, Mo., for appellant.

Dallas Scarborough, of Abilene, Tex., for appellees.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

SIBLEY, Circuit Judge.

The appellees, Caudle and Childs, sued McClanahan and Shell Petroleum Company for labor, for rental of oil well casing returned, and for the value of casing retained in connection with the drilling by Caudle and Childs of an oil well on property of Shell, but under a contract made with McClanahan, who was alleged to be in a mining partnership with Shell. We follow the witnesses in thus referring to the Shell Petroleum Company. A mechanic's lien for the improvement was claimed, but for want of compliance with the statutes it concededly failed. It was shown that McClanahan contracted with Caudle and Childs to drill a well upon a footage basis, and that they were to rent him the piping to be used for casing at stated rates; the casing to be pulled out and returned if the well was abandoned. There was no agreement proven as to what should be done if the well was a producer. The well was put down, and produced but slightly. The largest size of casing at the top was pulled out and returned, for which rental only was claimed. Shell refused to let Caudle and Childs take out the remaining casing, and its value is claimed. The contract of association between McClanahan and Shell is discussed below. There was only substituted service on McClanahan, so that when the lien failed he went out of the case for lack of jurisdiction over his person. Caudle and Childs and Shell moved for an instruction as to Shell's liability. The court held Shell to be liable. The jury under further instructions fixed amounts of $2,557 as due for the drilling, $240 for rental of the pulled casing, and $3,630 for the casing retained. Judgment thereupon was entered against Shell for all these items, and Shell appeals.

The only basis alleged for holding Shell liable for the labor and rentals due under McClanahan's contract was the mining partnership. Shell's answer denying the partnership should have been under oath. Texas Rev. St. 1925, art. 2010. The jurat thereon appears not to have been signed by an officer. Had exception been taken, it should have been sustained; but no objection to the pleading or the evidence offered under it was made. It is too late after judgment to claim that the partnership was not in issue. Berry v. Thomason (Tex. Civ. App.) 261 S. W. 154, 155; Farris v. U. S. Fidelity & Guaranty Co. (Tex. Civ. App.) 251 S. W. 612.

On that issue there is no proof of any holding out by Shell of McClanahan as its partner, or any statement or representation misleading to Caudle and Childs. They had the burden of proving a partnership in fact in order to bind Shell. Oil production from the earth is to be classed as mining. "A mining partnership arises by operation of law where co-owners work a mine." Munsey v. Mills & Garitty, 115 Tex. at page 483, 283 S. W. 754, 759; Wagner Supply Co. v. Bateman, 118 Tex. at page 505, 18 S.W.(2d) 1052. But co-operation in prospecting is not working a mine. Where property to be prospected is not jointly owned, the actual agreement controls. Hartney v. Gosling, 10 Wyo. 346, 68 P. 1118, 98 Am. St. Rep. 1005. A proposal to share by royalty or otherwise in the results of a well-drilling venture on the property of one coadventurer does not make a partnership, where the intention is otherwise. Gardner v. Wesner (Tex. Civ. App.) 55 S.W.(2d) 1104; Lowry Oil Corp. v. Bennett (Tex. Civ. App.) 16 S.W.(2d) 947; Wammack v. Jones, 103 Okl. 1, 229 P. 159. See also Transcontinental Oil Co. v. Mid-Kansas Oil & Gas Co. (C. C. A.) 29 F.(2d) 323. And where an agreement is made for a future partnership, but the partnership is to go into effect only after stipulated things are done, no partnership exists until the conditions are fulfilled. Buzard v. McAnulty, 77 Tex. at page 443, 444, 14 S. W. 138; Ash v. Mickleson, 118 Okl. 163, 247 P. 680, 681. In the present case McClanahan owned no interest in the 80-acre oil and gas lease to be explored. It belonged wholly to Shell. On September 28, 1928, they made an elaborate written agreement, briefly stated as follows: "Whereas the parties hereto are desirous of exploring and developing the 80 acre tract * * * for their mutual benefit under the terms and conditions hereinafter set forth," —McClanahan agreed at his sole cost and expense to drill a test well to the depth of 1,950 feet unless a satisfactory production was sooner reached, and to carry $10,000 of insurance to save Shell harmless against liability

for injury or death in connection with Mc-Clanahan's operations. On proof that all bills had been paid by McClanahan, and irrespective of the well's proving a producer or dry, Shell agreed to execute to McClanahan an assignment of a one-half interest in the 80-acre lease. If McClanahan failed to complete the well, he was to release all his right, title, and interest to Shell, and forfeit to Shell any equipment on the premises. On completion of the well and on assignment of the one-half interest, Shell was to have management of the whole lease, of the drilling of other wells, and of the sale of oil; keeping the records and making divisions. If either desired to sell out the other was to have the preference as purchaser. We think this agreement contemplated a mining partnership with Shell as the managing partner; but it was to arise only after McClanahan had delivered the test well, with all bills therefor paid, as the price of his share in the partnership. There was to be no joint ownership or sharing either of profits or liabilities before that time. The reference to liability insurance is not to be considered an admission that Shell would be liable for negligence in McClanahan's operations, either as a partner or as a principal for an agent, but rather as an effort to guard against contention by others that such liability existed. The stipulation as to McClanahan's releasing his right, interest, and title if he failed to perform his contract to complete the well referred only to his inchoate rights under the agreement and in the partially completed well. McClanahan's contract made with others in getting the well was not business done for the future partnership, but done on his own account in order to become a partner. Shell is no more responsible for the debts he thereby made than it would be if McClanahan was due to pay money for his half-interest, and had borrowed it from a bank. He delivered the well, made the affidavit that all debts had been paid, and got his assignment; but before that time he was no partner. Caudle and Childs dealt with him alone, and, failing to prove any authority in him at the time to bind Shell, they cannot hold Shell for McClanahan's obligations to them. Ash v. Mickleson, 118 Okl. 163, 247 P. 680; Wammack v. Jones, 103 Okl. 1, 229 P. 159. In the case last cited, the driller had in fact got the assignment of his interest in advance of the drilling. The same thing was true in Wagner Supply Co. v. Bateman, 118 Tex. at page 504, 505, 18 S.W.(2d) 1052. For that reason Bateman was said to be a partner. Not, however, so as to charge his co-owners with Bateman's debts, but so as to postpone Bateman's claim to be a creditor for the drilling to valid partnership debts, and liens. Bateman indeed had already gotten what he was to get for the drilling, to wit, his one-fourth interest in the venture. He had not contracted to be paid money for his work. The case is not in conflict with our holding.

■ But Caudle and Childs are entitled to have their casing or its value. They did not sell, but only rented it to McClanahan, to be returned with compensation for its use if the well should prove dry. Nothing was said as to what should be done if the well proved a producer; but an option to buy the casing at its reasonable value may be implied. Unless such option was exercised and payment made, the casing remained the property of Caudle and Childs, and Shell could not rightly detain it from them. By so doing Shell became liable to pay its value. Against this conclusion it is argued that the casing was like material furnished to a contractor to be built into a building, for which the furnisher might by statute have a lien on the building but the title to which he could not, without the knowledge of the owner of the building, retain. The analogy does not hold, for a building is not put up tentatively, as an oil well is put down. That the casing does not become necessarily a part of the realty when it is agreed otherwise has been often recognized. In Wagner Supply Co. v. Bateman, supra, at page 501 of 118 Tex., 18 S.W.(2d) 1052, it appears that Wagner Supply Company delivered the casing, retaining a mortgage lien on it which stipulated: "Which property is to be placed upon the hereinabove described tract of land, but subject to our exclusive control and not to become attached to or affixed to the realty." At page 502 of 118 Tex., 18 S.W.(2d) 1052, 1054, the court says: "It is clear from the mortgage itself that the contracting parties intended that it should remain personalty and be subject at all times to the mortgage lien. It is true that the casing was placed in an oil well, a use no doubt in the contemplation of the parties at the time the mortgage was given, but one not inconsistent with the right at all times to consider the casing as personal property, and to agree that it should not, by such use, become a part of the realty. In fact, the action of the parties in this instance is a very fair illustration of the use which may be made of casing, and of the interpretation which ought to be put upon this mortgage and the rights thereun-

der. As a matter of fact, some of the casing was drawn from the well, sold by Mr. Bateman, and the proceeds therefrom paid to the Wagner Supply Company in partial satisfaction of its note and mortgage. Under elementary authorities the parties had the undoubted right to agree that the property covered by the mortgage should continue to be personalty, although attached in the manner shown to the realty."

In Ash v. Mickleson, 118 Okl. 163, 247 P. 680, Mickleson loaned the casing to go into a test well, to be returned if the well was dry, but to be kept and compensated by a part of the oil if the well produced. The well was dry, and Mickleson's title to the casing was upheld against debts and liens for drilling the well. Gardner v. Wesner, supra, also involved loaned casing. Shell's contract with McClanahan provided that if the well proved dry McClanahan might salvage the casing unless Shell should buy it at its reasonable value; thus showing that they did not regard the casing as becoming a part of Shell's realty by its mere use. Caudle and Childs did not lose their title to the casing by its being placed in the well under a contract of rental.

But it is further said that by Tex. Rev. St. 1925, art. 5489, reservations of title as security for purchase money when possession is delivered to the vendee must be in writing and recorded to be effective against third persons. The statute does not apply, because when the pipe was delivered and used there was no sale and no purchase money to be secured. There is no statute requiring a contract of rental of personal property to be recorded. The statute cited applies only to sales. Milburn Mfg. Co. v. Peak, 89 Tex. 209, 34 S. W. 102; Chase-Hackley Piano Co. v. Clymer (Tex. Civ. App.) 202 S. W. 214; Renfroe v. Hall (Tex. Civ. App.) 202 S. W. 218.

The recitals of the judgment show that by motion of both parties the law question of Shell's liability was left as resting on uncontradicted evidence to the judge, and that questions as to amounts due were submitted to the jury. No one complains of the findings of the jury. We sustain the action of the judge on such findings in adjudging Shell liable for the value of the casing, but we hold that for labor and for rental of the returned casing Shell is not liable. We reverse the cause, with direction to enter judgment accordingly.

Reversed and rendered.