*Decision will be entered for respondent.*

H. H. WEGENER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 92333. Promulgated April 16, 1940.

*Charles H. Garnett, Esq.*, and *C. F. Miller, C. P. A.*, for the petitioner.

*John E. Marshall, Esq.*, for the respondent.

858

OPINION.

KERN: The only issue before us is whether the respondent erred in including in petitioner's income for 1935 the amount of $23,592.08 as additional income from drilling operations on the Rusk County, Texas, oil leases.

In computing petitioner's income tax liability the respondent considered Gant, Garvin & Wegener to be a partnership for income tax purposes and petitioner a partner. He considered that petitioner, as an individual contractor, drilled oil wells on the leased property at an agreed price, and determined that in the taxable year petitioner realized from such drilling operations a taxable net profit of $70,776.23, and had failed to include $23,592.08 of that amount in income.

The petitioner contends that Gant, Garvin & Wegener is not a partnership, and that the $23,592.08 was not taxable income to him.

It appears from the record that petitioner became associated with Gant and Garvin in the development of the Rusk County oil and gas leases early in 1932. No partnership agreement was entered into at that time, and it is obvious from the record that the parties did not intend to form a general partnership. It was a joint enterprise in which Gant, Garvin, and Wegener, and their individual interests in the Rusk County, Texas, oil and gas leases were jointly and severally liable for full performance of all obligations imposed upon Gant and Garvin under the original agreement and the supplement thereto. In order to borrow money they jointly and severally (as a partnership and as individuals) assigned their interests in the oil leases in trust as security for loans and provided for the payment of the loans from the joint income from the sale of oil and gas. These loans were repaid from oil and gas produced by the joint operation of the leases. In financial statements the petitioner stated that the Rusk County, Texas, operations were a joint venture and not a partnership. A joint bank account was opened in 1932. Letterheads bearing the name of Gant, Garvin & Wegener were printed and used in the business. Late in 1932 books of account were set up in the name of Gant, Garvin & Wegener, and thereafter billings were made to and accounts paid by the firm. The enterprise was conducted by Gant, Garvin, and Wegener, who consulted with each other concerning the business and shared equally in the profits and losses. From the facts in the record we conclude that the development and operation of the Rusk County, Texas, oil and gas leases by petitioner and Walter H. Gant and Knox L. Garvin was a joint venture conducted under the name of Gant, Garvin & Wegener. As such it was properly treated as a partnership by the respondent for income tax purposes under section 801 (a) (3) of the Revenue Act of 1934, and

petitioner properly returned his proportionate share of the net income from such venture. *Burk-Waggoner Oil Association* v. *Hopkins*, 269 U. S. 110.

But the fact that Gant, Garvin & Wegener is considered a partnership for the purpose of computing its net income and the members of the firm are considered partners for the purpose of reporting their distributable shares of its taxable net income under the Federal revenue laws, does not necessarily mean that it is a general partnership and the members of the firm are partners for all purposes in the conduct of its business. Cf. *Dolores Crabb*, 41 B. T. A. 686; *Sterling Morton*, 38 B. T. A. 1270. It remains a joint venture, and such cases as *Leo Schwartz*, 7 B. T. A. 223; *S. U. Tilton Estate*, 8 B. T. A. 914; and *Augustine M. Lloyd*, 15 B. T. A. 82 (cited by petitioner), which deal with partnerships, are not controlling.

Petitioner argues that, regardless of whether Gant, Garvin & Wegener is a partnership, he is not subject to tax on one-third of the profit received from drilling because as to him it was a distribution of a part of his capital investment. This argument, while ingenious, is not in accordance with the facts. Gant, Garvin & Wegener, as coadventurers, were engaged in the business of developing and operating the leasehold. They jointly borrowed money for this purpose and entered into an agreement under which petitioner, who was a driller, undertook to drill the oil wells at an agreed price per foot. In the taxable year they paid petitioner under this contract $130,594.50 for the footage drilled. This was not a mere paper transaction. It was a transaction in which Gant, Garvin & Wegener paid out cash for oil wells, which became capital assets of the joint venture in which petitioner had the same individual interest as his coadventurers. The $130,594.50 which was paid to petitioner by Gant, Garvin & Wegener was merely changed from capital assets in cash to capital assets consisting of oil wells, in which petitioner retained the same undivided interest he had in the cash. He can not, therefore, be said to have subtracted from the newly acquired assets a part of his capital investment therein and at the same time continue to hold an equal interest with his coadventurers in the property. He can not retain his capital in the joint venture and withdraw it too. It is true that the joint venture had a right to elect to treat "intangible" development costs as ordinary and necessary expenditures in its income tax return, Regulations 86, art. 23 (m)—16, but it did not do this. Obviously it elected to capitalize the entire development cost, and we see no reason for treating it otherwise.

Petitioner argues in effect that in the taxable year he was engaged in drilling oil wells on his undivided one-third interest in the leased property at his own expense and without profit, and at the same

time he was drilling oil wells on the undivided two-thirds interest of Gant and Garvin at a profit under a contract with them. We do not think the facts in the record add up to this construction.

It was necessary for the owners of the leases to borrow money to develop the property. Early in 1932 and before a loan was secured from the bank, each of the parties necessarily contributed his proportionate share of the cost of drilling and petitioner billed Gant and Garvin with their share of the cost. At this time they were associated under an oral agreement and there had been no assignment to petitioner of a one-third interest in the leasehold. In October 1932 petitioner and Gant and Garvin jointly borrowed $80,000, and petitioner acquired a one-third interest in the leasehold by assignment. Thereafter Gant, Garvin & Wegener conducted the business as coadventurers and not as individuals, using their joint capital, their joint credit, and their joint efforts in developing and operating the oil properties. A new agreement for drilling was entered into, which was subsequently changed as to price per foot, but the entire footage drilled at the agreed price was billed by petitioner to Gant, Garvin & Wegener, paid from the bank account of Gant, Garvin & Wegener, and treated as a capital investment. From the facts in the record and the relation of the parties, we conclude that the development and operation of the property was carried on by the joint venture and that petitioner as an individual drilled the oil wells for Gant, Garvin & Wegener, and not for himself as to his interest, and for Gant and Garvin as to their interest. We do not think that the joint venture was paying petitioner a profit for drilling wells on his own property.

Petitioner received from Gant, Garvin & Wegener the full contract price of $130,594.50 for the oil wells drilled during the taxable year. The cost of the drilling was $59,818.27. Obviously, he realized a profit in the amount of $70,776.23, which is income taxable to him.

The determination of the respondent is affirmed.

*Decision will be entered under Rule 50.*