## WEGENER v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9693.

Circuit Court of Appeals, Fifth Circuit.

April 7, 1941.

HUTCHESON, Circuit Judge, dissenting in part.

———◆———

C. F. Miller and Charles H. Garnett, both of Oklahoma City, Okl., for petitioner.

Lee A. Jackson, Sewall Key, and J. Louis Monarch, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Int. Rev., and Claude R. Marshall, Sp. Atty., Bureau of Int. Rev., both of Washington, D. C., for respondent.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

■ At the outset we are confronted with a motion to dismiss filed by the Commissioner. The question presented by the motion arises in this way: The petitioner, H. H. Wegener, filed his income tax return for 1935 at the office of the Collector of Internal Revenue, Oklahoma City, Oklahoma, in the Tenth Judicial Circuit. The petitioner should have appealed to the Circuit Court of Appeals for the Tenth Circuit, but by mistake filed his petition for review in this court. In February, 1941, after it was too late to file an appeal to the Circuit Court of Appeals for the Tenth Circuit, the taxpayer discovered his mistake. He then sought to come within the agreement provision of Section 1141 of the Internal Revenue Code, 26 U.S.C.A. Int. Rev.Code, § 1141, under which the taxpayer and the Commissioner may stipulate for a review by any United States Court of Appeals. The Commissioner consented to a submission of the cause here. This consent, however, was given with the reservation that it was to be effective only if this court should hold that his authority to consent still persisted although the time for appeal had passed, and the Commissioner reserved the right to present that question to this court for decision.

We are clear that consent was given with authority, and that it was effective to confer jurisdiction upon this court as if it had been given before the petition for review was filed here. The statute, in providing that the Commissioner and the taxpayer may by agreement submit the cause to any United States Court of Appeals, fixes no time for making the agreement and we find no reason for writing such a limitation into the statute. The motion to dismiss the petition is overruled.

On the merits the pertinent facts are these: In February, 1932, Walter H. Gant

and Knox L. Garvin acquired an interest in certain oil and gas leases on lands in Rusk County, Texas. Shortly after Gant and Garvin acquired their interests in the leases it was agreed that H. H. Wegener, a drilling contractor, would take a one-third interest in the leases and would drill wells on the property at an agreed price. During the negotiations Wegener expressed himself as being unwilling to enter into a partnership deal, and no partnership agreement was entered into by the parties. Wegener proceeded to drill wells and billed Gant and Garvin for their two-thirds proportionate share of the drilling costs. In October, 1932, a loan of $80,000 was obtained from a bank in Oklahoma City, and a deed of trust was executed by Gant, Garvin, and Wegener, "as individuals and as partners", to A. J. Peters, as trustee, to secure the loan. According to the terms of the trust instrument checks in payment of oil runs were to be sent direct to the bank until the loan had been repaid. A separate bank account was opened at the bank by and in the name of Gant, Garvin & Wegener, and checks were issued on this account. On October 31, 1932, Gant and Garvin, by written agreement, assigned to Wegener an undivided one-third interest in the Rusk County leases, and Wegener assumed an undivided one-third of all the duties, obligations, and liabilities imposed upon Gant and Garvin by their agreement with their assignors. Thereafter books in the name of Gant, Garvin & Wegener were set up for the joint enterprise, letterheads bearing the name of "Gant, Garvin & Wegener" were printed and used, and billings were made to and paid by the firm. The enterprise was conducted by Gant, Garvin, and Wegener, who consulted with each other concerning the business and shared equally in the profits and losses. It was understood that Wegener, who had theretofore billed Gant and Garvin for two-thirds of the drilling costs, would drill wells at a footage rate, and that he would receive the full amount of the agreed footage rate from Gant, Garvin & Wegener. From this time on Wegener charged to and was paid by Gant, Garvin & Wegener the full amount of the agreed drilling costs.

In 1935 Gant, Garvin, and Wegener, as copartners and as individuals, borrowed $300,000 from the National Bank of Tulsa, and assigned the Rusk County leases as security for the loan. Money in payment of oil runs went to the bank to liquidate this indebtedness. In financial statements filed by Wegener he stated that the Rusk County operations were a "joint venture".

Gant, Garvin & Wegener filed partnership returns on Form 1065 for the taxable years 1932, '33, '34, and '35. The return for 1935 showed a net income of $55,680.-67, and gross profits of $174,609.15. No deduction was taken on these returns for the cost of drilling wells, or for any amount paid out for such drilling. In his 1935 return Wegener reported his one-third pro rata share of the net income shown on the partnership return, or $18,560.22.

In 1935 Wegener was paid the full amount of the agreed footage rate for drilling wells during that year. This amount, including the agreed rental for tools, was $130,594.50. For drilling these wells Wegener's expense as a drilling contractor was $59,818.27. This amount deducted from the total amount received from Gant, Garvin & Wegener left Wegener with a net profit of $70,776.23 on his drilling operations. In his individual income tax return for 1935 he reported as net income from drilling and rental of tools, "Gant, Garvin & Wegener, $47,184.-15", which amount he calculated as follows:

| | |
|---|---|
| Amount received from drilling, rental tools | $130,594.50 |
| Drilling expense | 59,818.27 |
| Net Profit | $ 70,776.23 |
| Less 1/3 net profit allocated to taxpayer's interest | 23,592.08 |
| 2/3 net profit allocated to Gant and Garvin | $ 47,184.15 |

The Commissioner included in Wegener's income the sum of $23,592.08, designated by the taxpayer as income allocated to his one-third interest, and determined a deficiency in income taxes for 1935. The statement accompanying the Commissioner's letter, after quoting the definition of a "partnership" contained in Section 801(a) (3), Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Code, § 3797(a) (2), stated "that for Federal income tax purposes Gant, Garvin & Wegener is a partnership and since you realized in cash a profit from drilling wells from the partnership, the entire amount of the profit constitutes taxable income to you."

The taxpayer filed petition for redetermination of the deficiency, and the Board of Tax Appeals, after a hearing, entered decision affirming the determination of the Commissioner. Wegener v. Commissioner, 41 B.T.A. 857, 861. The Board found that Gant, Garvin & Wegener was a "joint venture conducted under the name of Gant, Garvin & Wegener"; that as such it was properly treated as a partnership for income tax purposes under Section 801(a) (3); and that, "From the facts in the record and the relation of the parties, we conclude that the development and operation of the property was carried on by the joint venture and that petitioner as an individual drilled the oil wells for Gant, Garvin & Wegener, and not for himself as to his interest, and for Gant and Garvin as to their interest."

The taxpayer contends that under Texas law he and his associates held the leases as tenants in common, each owning an undivided one-third interest; that concerning their operation of the properties they were a mining partnership; that one-third of the $130,594.50 paid to him for drilling was a distribution to him of a part of his capital investment, and not a taxable gain or profit; and that the Board erred in including the $23,592.08 in his income for 1935.

■ Although the relationship between Gant, Garvin, and Wegener might not be considered a general partnership under Texas law, when we view their relationship, as we must, in the light of the federal taxing statutes, it is clear that they were operating within the definition of a "partnership" contained in Section 801(a) (3). We agree with the Board that after 1932 they operated not as individuals but as a business unit, using their joint capital, their joint credit, and their joint efforts in developing and operating the oil properties.

Citing Jennings v. Commissioner, 5 Cir., 110 F.2d 945, and Neuberger v. Commissioner, 311 U.S. 83, 61 S.Ct. 97, 85 L.Ed. ——, the petitioner contends that as a partner he should not be taxed on one-third of the profits received by him from the partnership. These cases dealt with a partner's distributive share of partnership income, and not with individual profits such as those earned and collected by the taxpayer in this case. In Ortiz Oil Company v. Commissioner, 5 Cir., 102 F.2d 508, strongly relied upon by the petitioner,

Ortiz, the owner of a one-half interest in a lease, drilled a well under a turnkey agreement and other owners simply paid Ortiz their pro rata share of the drilling costs out of their individual funds. The case at bar is unlike the Ortiz case. Wegener drilled the first wells and the other owners, Gant and Garvin, simply paid to him their two-thirds pro rata share of the agreed drilling costs, but late in 1932 this method of doing business was abandoned by the parties and Gant, Garvin, and Wegener elected to and did carry on their operations jointly under a new plan. For reasons best known to themselves they chose to carry on their operations as a joint venture in the name of Gant, Garvin & Wegener, with a joint banking account, and a separate bookkeeping system. This method of doing business cannot at this late date be repudiated solely to avoid taxation. Furthermore, the cost of drilling wells was capitalized, and Wegener and his associates will recover this cost by way of depletion as oil is produced from the leases. The tax assessed against Wegener is not upon a mere paper profit, it is a tax upon an actual cash profit made by Wegener from his own individual operations as a drilling contractor. He drilled for Gant, Garvin & Wegener as any outsider might have done, and he actually received from the firm a cash payment of $130,594.50, which included a net profit of $70,776.23. The Commissioner and the Board properly included all of this net profit in the petitioner's income for 1935.

The decision of the Board is affirmed.

HUTCHESON, Circuit Judge (dissenting).

I agree with the majority that the motion to dismiss should be overruled. I disagree with their view that the Board's order should be affirmed. The question is an interesting and important one. I think the position of the Board, affirmed by the majority, is both unsound in law and unjust to the petitioner. I therefore am giving fully my reasons for dissenting.

The question for decision on the merits is whether only two-thirds as petitioner contends, or all, as the Commissioner contends, of the sums, in excess of their cost to petitioner, paid him in the tax year in question out of a joint account set up for that purpose, for drilling wells on oil leases owned jointly by himself and two associates, Gant and Garvin, were taxable gains.

The petitioner's contention was that the one-third in controversy was a return to him of his own capital and therefore could not be gains. The Commissioner denied this. He insisted that for tax purposes, payment out of the joint account of Gant, Garvin and Wegener from which the sums were paid was an entirely different thing from payment from the individual account of Gant, of Garvin and of Wegener, and that petitioner must be regarded as having dealt jointly with the joint account and not individually with Gant, Garvin and Wegener. He made his determination accordingly.

The Board concluded [1] that Gant, Garvin and Wegener were not a partnership but a joint venture for operating for oil and gas the leases the three jointly owned "and that petitioner as an individual drilled the oil wells for Gant, Garvin & Wegener, and not for himself as to his interest, and for Gant and Garvin as to their interest." So concluding, it rejected petitioner's contention; that the only real profits he received were those derived from the two-thirds of the $70,776.23, paid him in excess of the cost, $59,818.27, attributable to the contributions of his associates to the joint account; and that as to the other one-third, contributed by himself, the supposed profits were not actual but suppositious profits derived from dealing with himself. It therefore affirmed the determination of the Commissioner.

Petitioner is here insisting that the Board by treating him, in his capacity as an oil well drilling contractor, as a separate and distinct person from himself, as owner of leasehold interests, has unreally and unjustly created income out of the payment to himself as driller, for himself as owner, of sums, advanced by himself as owner, and expended by himself as driller, in the development of his interest in the lease.

These are the controlling facts. Petitioner is an oil well contractor. In 1932, he acquired a one-third interest with Gant and Garvin in certain oil and gas leases in Rusk County, Texas, and thereafter under an arrangement with his associates, he, from time to time, drilled oil wells on the properties at an agreed price per foot. In the beginning the drilling was handled in this way. Petitioner assumed one-third of the agreed drilling cost and billed Gant

and Garvin each for one-third thereof. Afterwards, while no partnership agreement was entered into and it is obvious from the record that the parties did not intend to and did not form a general partnership, they did arrange for a joint account and for a method of operating on capital secured for their joint account. The moneys were borrowed on their joint and several notes, with assignments of their interests in the oil leases as security, and provision for the payment of the loans from oil and gas runs, which were run to each owner individually, on the basis of one-third to each. In financial statements, the petitioner stated that the Rusk County, Texas, operations were a joint venture and not a partnership. A joint bank account was opened in the name of Gant, Garvin and Wegener. Letterheads bearing this name were printed and used and late in 1932 books of account were set up in that name and thereafter bills were made to, and accounts paid, in the joint name.

In the tax year in question, 1935, the joint account paid on an agreed price per foot, $130,594.50 for the footage drilled. The cost to the petitioner as drilling contractor was $59,818.27. On his books petitioner charged the whole sum received to an account called Gant, Garvin and Wegener and to offset this charge, he credited gross income with the paper profit of $70,776.23. Of this amount, attributing one-third to his own contributions and two-thirds to that of his associates, he charged himself with $47,184.16, or two-thirds thereof, as profits and set up the other one-third in a "lease investment contra account", so as to clearly show that his investment cost was increased by the drilling, not $43,531.50 but $19,939.42, that sum less the $23,000 received by him as return from his capital. Gant, Garvin and Wegener filed partnership returns on Form 1065 for the taxable years, 1932, 33, 34 and 35. These returns showed a net income for 1935 of $55,680.67 and gross profits of $174,609.15. No deduction was taken on these returns for the cost of drilling oil wells or for any amount paid out for such drilling. Petitioner in 1935 reported his pro rata of the share net income shown on the partnership return. He also reported net income from drilling and rental of tools, "Gant, Garvin and Wegener", $47,-184.15. This represented two-thirds of the

---

[1] 41 B.T.A. 857, 863.

excess of the agreed price over his cost. This was computed by him as follows:

| | |
|---|---|
| Amount received from drilling, rental tools | $130,594.50 |
| Drilling expense | 59,818.27 |
| Net profit | $ 70,776.23 |
| 1/3 Net profit allocated to petitioner's interest | 23,592.27 |
| 2/3 Net profit allocated to Gant & Garvin | $ 47,184.15 |

On these facts the Board found that petitioner was not a partner with Gant & Garvin but that each owned individually a share in the property and that though they made partnership returns and reported and paid on their distributable shares as partners, they are not to be treated as constituting a partnership. Nevertheless by the simple device of finding that the association of the three constituted a joint venture, in short, a special or limited partnership, and in complete disregard of the fact that except for its limited scope, such a venture has all the incidents of a partnership; it endowed this venture with an existence completely separate from the existence of its members, and with gaze foreshortened by the intensity of this view, it completely overlooked the fact, that repayment by the venture to Wegener, of moneys he had contributed to the capital of the enterprise, could not constitute a gain to him.

Petitioner is here insisting that in determining as they did, the Commissioner and the Board in violation of the rule that strained and unreal construction may not be resorted to to create tax gains and particularly of the rule that a partnership is not for income tax purposes, an entity, separate and apart from the partners[2] have unjustly subjected him to taxation with respect, not of actual but of purely suppositious gains.

In support he urges upon us; that he and his associates were, as to the ownership of the leaseholds in question, not partners, but tenants in common,[3] each owning an undivided one-third interest; that as to the operations on the leases the three were a mining partnership,[4] that of the money paid him for drilling out of the moneys borrowed on that partnership and placed in their joint account as paid in capital, the one-third thereof attributable to his share was really a distribution to him of part of his capital investment and not gain, profit or income to him; that as to that one-third he could add to his capital investment the actual cost;[5] that a joint venture is only a special partnership.[6] Finally, he insists that whether the arrangements between petitioner and Gant and Garvin for the operation of the properties be regarded as a general partnership, a mining partnership or a joint venture is wholly unimportant here, for it is not the partnership that is, but the partners separately that are, taxed, and the moneys paid petitioner out of his own contributions to capital must be regarded not as income or gains to him but as a return pro tanto of his capital.

I agree with petitioner that he and his associates constituted a mining partnership, and that the sum in question here was a return to him of a part of his capital. I agree with him too that for the purpose of the decision of the question here, it is not important whether the associates be re-

[2] Jennings v. Com'r, 5 Cir., 110 F.2d 945; Craik v. United States, Ct.Cl., 31 F.Supp. 132, Approved; Nuberger v. Com'r, 311 U.S. 83, 61 S.Ct. 97, 99, 85 L.Ed. —.

[3] Lee v. Wysong, 5 Cir., 128 F. 833; Bolding v. Camp, Tex.Com.App., 6 S.W. 2d 94; Peterson v. Fowler, 73 Tex. 524, 11 S.W. 534; 11 Tex.Jur. 422, Sec. 14; Com'r v. Horseshoe Lease Syndicate, 5 Cir., 110 F.2d 748; Com'r v. Rector & Davidson, 5 Cir., 111 F.2d 332; Ortiz Oil Co. v. Com'r, 5 Cir., 102 F.2d 508; Waddell v. Com'r, 5 Cir., 102 F.2d 503, 505.

[4] Munsey v. Mills & Garitty, 115 Tex. 469, 283 S.W. 754; Wagner Supply Co. v. Bateman, 118 Tex. 498, 18 S.W.2d 1052; Thornton, Law of Oil and Gas, Vol. 1, page 894; 29 Tex.Jur. 698; Adams v. Texhoma Co., Tex.Civ.App., 262 S.W. 139; Shell Pet. Corp. v. Caudle, 5 Cir., 63 F.2d 296.

[5] McDaniel v. State Fair, Tex.Civ.App., 286 S.W. 513; O K Boiler & Welding Co. v. Minetonka, 103 Okl. 226, 229 P. 1045; Dexter & Carpenter v. Houston, 4 Cir., 20 F.2d 647; First Mechanics Bank v. Com'r, 3 Cir., 91 F.2d 275.

[6] Leo Schwartz v. Com'r, 7 B.T.A. 223; Tilton's Estate, 8 B.T.A. 914; Lloyd v. Com'r, 15 B.T.A. 82; United States v. Coulby, D.C., 251 F. 982; Id., 6 Cir., 258 F. 27.

54

garded as constituting a mining partnership, a general partnership or a joint venture, in the nature of a special partnership as the Board found, for without regard to the name to be given to their association, the sum in question here represents not income to petitioner, but a return of his capital.

The Board's statement that what occurred here was a shifting by Wegener of his cash capital assets to oil well capital assets in which petitioner retained the same undivided interest he had in the leases is apparently based upon the erroneous [7] view of the Board, that Wegener must be regarded as having contributed to the drilling the same amount as his associates did. This will not do. There was such a shifting as to the $19,939.42 representing Wegener's one-third of the cost, there was not, there could not be such a shifting as to the $23,592.08 in question here. For this was not an outlay by Wegener but a repayment to him by the venture of that part of the agreed price which was in excess of his cost.

Looked at realistically, that is, as the facts are, Gant, Garvin and Wegener represent merely a name and device through which petitioner and his associates conducted the business of drilling on and operating their properties. The substance of the matter at all times was that the properties were owned by the three as co-owners, the development was paid for by the three as co-owners, and the returns from the oil runs were paid individually to each of the three as co-owners. Under these facts, Wegener as to the $23,592.08 in question, was merely being repaid advances he had made to the joint venture and it would be a denial of everything that has been written and said in Taxing Statutes and Decisions, relating to and affecting partners and partnerships and their return and payment of income taxes to treat this sum as income. Jennings v. Com'r; Nuberger v. Commissioner; Craik v. United States; Ortiz Oil Co. v. Commissioner; United States v. Coulby, supra; Carroll v. Commissioner, 5 Cir., 70 F.2d 806.

The Board's order should be reversed and the cause remanded for re-determination in accordance with petitioner's contention. I respectfully dissent from its affirmance.

[7] Ortiz Oil Co. v. Commissioner, supra.