Edward P. KRICHBAUM

v.

UNITED STATES of America.

Civ. A. No. 2741.

United States District Court
E. D. Tennessee, N. D.

Feb. 16, 1956.

Clyde W. Key, Knoxville, Tenn., for plaintiff.

John C. Crawford, Jr., U. S. Dist. Atty., Knoxville, Tenn., for defendant.

ROBERT L. TAYLOR, District Judge.

This is a suit to recover $593.89, plus interest from March 15, 1952, representing income taxes paid by the taxpayer for the year 1951.

Plaintiff, the taxpayer, worked as an administrative assistant to a road builder by the name of John L. Humbard in Ethiopia from April 22, 1951 until April, 1953, except for a short period that he was under treatment by doctors in the United States because of a hernia condition. He worked at this job from April 22, 1951 throughout that calendar year, with the noted exception, and for more than 510 full days within the succeeding consecutive 18 months.

The Government concedes that his foreign residence in the Empire of Ethiopia was sufficient to bring him within the terms of Section 116(a) (2) of the Internal Revenue law of 1939, as amended by the Revenue Act of 1951, 26 U.S.C. § 116(a) (2), unless his case falls within the exclusive provision of the exemption portion of that section of the Code.

The taxpayer was hired by the Bureau of Public Roads, Department of Commerce of the United States, to work in Ethiopia. He stated in writing that he would remain in the foreign service of the Bureau of Public Roads for 12 months. He earned $4,039.33 during the calendar year of 1951.

The Government of Ethiopia borrowed $5,000,000 from the International Bank, some of which was used on the road building project to which the taxpayer and other Americans were assigned. The Ethiopian Government set up a board consisting of five directors who caused the money to be transferred from the Bank to the Imperial Highway Authority of Ethiopia for use on the road project. A fund was set up by this Board known as the salary fund which was transferred to the Government of the United States to pay the salaries of the Americans who were working on the project, of whom the taxpayer was one. The taxpayer received the benefits of the Social Security laws as an employee of the United States and was paid compensation benefits for the injury sustained while in Ethiopia under the Federal Workmen's Compensation Act of the United States, 5 U.S.C.A. § 751 et seq. The compensation benefits that were paid to the taxpayer by the United States were charged back to the Ethiopian Government.

The pertinent parts of Section 116(a) (2) of the Internal Revenue Code of

1939, as amended by the 1951 Revenue Act are as follows:

"§ 116. Exclusions from gross income

"In addition to the items specified in section 22(b), the following items shall not be included in gross income and shall be exempt from taxation under this chapter:

"(a) (As amended by Sec. 148(a) of the Revenue Act of 1942, c. 619, 56 Stat. 798) Earned income from sources without the United States.

\* \* \* \* \*

"(2) (As amended by Sec. 321(a) of the Revenue Act of 1951, c. 521, 65 Stat. 452) Presence in foreign country for 17 months. In the case of an individual citizen of the United States, who during any period of 18 consecutive months is present in a foreign country or countries during at least 510 full days in such period, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) if such amounts constitute earned income (as defined in paragraph (3)) attributable to such period; but such individual shall not be allowed as a deduction from his gross income any deductions properly allocable to or chargeable against amounts excluded from gross income under this paragraph. \* \* \*"
26 U.S.C. 1952 ed., Sec. 116.

Plaintiff earned the salary which he seeks to have exempted from income taxes while he was loaned to the Imperial Government of Ethiopia for service with the Imperial Road Service of Ethiopia by the Bureau of Public Roads of the Department of Commerce. Whether the income which he earned in this status was subject to income taxation is to be determined by answering the question, "Who paid the income?" If it was paid to the plaintiff by the United States, or any agency thereof, it was taxable income. If it was not paid by the United States or an agency thereof, it was not taxable income. At the time plaintiff was employed he stated, "I expect to stay until the job is completed." Nothing was said as to who should pay his salary. In his income tax report for 1951, he lists as his employer the United States Bureau of Public Roads, Department of Commerce.

On January 14, 1952, plaintiff asked the Bureau of Public Roads to discontinue withholding income tax from his salary on the ground that he was employed by the Empire of Ethiopia.

Section 1.03 of the loan agreement between the Empire of Ethiopia and the International Bank for Reconstruction and Development provides in part: "The Bank shall open a loan account on its books in the name of the borrower and shall credit to such account the amount of the loan." The amount of the loan was subject to withdrawal by the borrower.

On February 26, 1951, the American Embassy at Addis Ababa, Ethiopia issued Note No. 103 which explained the functions of the Bureau of Public Roads of the Department of Commerce of the United States in the construction of the road, to the terms of which the Ethiopian government agreed. This written agreement regulated the disbursements of the proceeds of the loan. It provided in substance that the Bureau of Public Roads would assign certain of its personnel to the Ethiopian government for the purpose of supervising the road work and that the salaries of the American personnel would be paid by the government of Ethiopia out of the proceeds of the loan. The portions of the note dealing with these subjects are as follows:

"I

"During the term of this agreement in contemplation of the provisions of said Section 6.01 of the said Loan Agreement, after mutual agreement, the Bureau shall provide and assign from its technical, engineering, and other staff, competent and qualified personnel in ac-

cordance with the specifications thereof set forth in Schedule I attached hereto and made a part hereof. Such personnel shall be so provided and assigned by the Bureau at the time or times required by and for the period to be determined by the Authority and the Bureau and they shall be mutually satisfactory to the Empire of Ethiopia and the International Bank for Reconstruction and Development.

"II

"The obligation to pay the salaries of the personnel so provided and assigned by the Bureau and of post differential, post allowances, quarters allowances, and separation allowances, prescribed by Public Law 491—80th Congress, Independent Offices Appropriation Act of 1949 [62 Stat. 176] (Public Law 862—80th Congress, Supplemental Independent Offices Appropriation Act [62 Stat. 1196] (2) and other applicable United States statutes and regulations and as they may hereafter be amended, shall be assumed by the Authority subject to the manner and currency of payment hereinafter provided.

"It is agreed that the Authority will authorize the Bank to provide within the Bureau a working fund in an amount to be mutually determined by them from which these and all other proper obligations for the account of the Authority can be paid by the Bureau."

The word "Bureau" as used in the above agreement refers to the Bureau of Public Roads of the United States Department of Commerce, and the word "Authority" refers to the Imperial Highway Authority of the Empire of Ethiopia.

This agreement shows that the American employees, including the taxpayer who worked on the highway during the income tax year that is involved in this suit, were loaned employees, who were loaned by the American government to the Ethiopian government for a specified purpose.

The government insists that the Bureau of Public Roads, Department of Commerce, an agency of the United States, paid the salary of the taxpayer within the meaning of Section 116(a) (2) of the Internal Revenue Code of 1939, as amended by the 1951 Revenue Act. With this insistence the Court does not agree. Payment in a legal sense relates to a debt or an obligation of the party who pays. Payment may be made by the debtor or by another in his behalf. If it is paid by another, but with the debtor's money, it is payment by the debtor. The record in this case produced orally and through exhibits in the form of documents establishes clearly that the obligation to pay plaintiff was upon the government of Ethiopia. Though a device was created by the Ethiopian government whereby the Bureau of Public Roads of the American government handled the salary fund, payment, nevertheless, was with Ethiopia's money. It was money that Ethiopia had acquired by means of a loan from a Bank. Under the loan agreement, the loan was subject to repayment with interest. Restated, the Bank allocated to control by the Ethiopian government a portion of the loan for payment of plaintiff's salary which, in turn, set up a salary fund to reimburse the Bureau of Public Roads of the Department of Commerce for funds used in paying plaintiff's salary, but the result was that the Bureau paid Ethiopia's debt to plaintiff with Ethiopia's money. In this situation the Bureau was the paymaster, not the payor.

Section 116(a) (2) excludes from the exemption amounts paid by the United States or any agency thereof as payor but includes in the exemptions amounts paid by the United States, or any agency thereof, when acting for some other party, or when acting in the nature of a paymaster.

The legislative history of the exemption and the exception, which is set forth in detail in the government's brief,

shows that members of both Houses of Congress at various times have held conflicting views on the subjects. The exception for amounts paid by the United States, or any agency thereof, was first written into the Internal Revenue Code in 1932 in Section 116(a) (1). In that year the Senate Finance Committee undertook to eliminate the exclusion as follows (S.Rep.No. 665, 72d Cong., 1st Sess., p. 31 (1939–1 Cum.Bull. (Part 2) 496, 518)):

"This section has been amended by the elimination of the sub-section excluding from gross income amounts received by bona fide nonresidents of the United States from source without the United States. Your committee believes there is no reason for the continuance of this exemption in the case of citizens of the United States residing abroad for the reason that under other sections of the act such citizens are granted a credit for income taxes paid foreign countries and should not be further relieved from Federal income taxes. Furthermore, a considerable proportion of the individuals previously benefited by this sub-section have been employees of the United States who, because of their status as such, were usually exempt from any foreign tax upon their compensation received from the United States; these citizens are not believed by your committee to be entitled to a complete exemption from the Federal income tax upon such compensation."

Senator Reed disagreed (75 Cong. Record, Part 9, p. 10410).

The next amendment was, at the top of page 93, to strike out:

"(a) Earned income from sources without United States: In the case of an individual citizen of the United States, a bona fide nonresident of the United States for more than six months during the taxable year, amounts received from sources without the United States if such amounts constitute earned income as defined in section 25(g); but such individual shall not be allowed as a deduction from his gross income any deductions properly allocable to or chargeable against amounts excluded from gross income under this subsection.

"Mr. Reed. Mr. President, I want to propose an amendment to the material which is proposed to be stricken out on page 93, and then to ask the Senate to disagree to the action of the committee in striking it out. Here is the situation:

"In order to help our foreign trade and to put all Americans who are working abroad in a position of equality with their competitors, the Congress in several successive tax bills has exempted from our income taxes that part of the earnings of those Americans which was earned abroad, provided they lived abroad more than six months out of the year.

"The reason for doing that was that most countries—Canada and Great Britain, for example—subject an American to their income tax if that American lives in their country for more than six months. The result of taxing such Americans would be that, first, they paid the British or the Canadian income tax and then the American tax on top of it.

"We discovered that the provision had been stretched to the point of exempting an American naval officer or army officer who was stationed, let us say, in the embassy in London or in some foreign country, like our troops in China. Those people were getting complete exemption from the American income tax. We discovered further, to our surprise, that it had been held that American ambassadors and ministers and officers of the Foreign Service were getting clear out of the payment of any income tax by virtue of the same provision, which nobody in the world ever intended when the provision was first adopt-

·ed. These people do not deserve the exemption, because they are not subject to the income taxation of the foreign countries in which they are stationed, any more than we would tax the British ambassador here in Washington on his income.

"In an effort to remove that situation the committee has cured the wart by cutting off the whole leg, and has recommended the striking out of the paragraph entirely. I think the remedy is much too drastic for the thing we are trying to cure. So I move to amend by inserting on page 93, after line 5, in parentheses, the words 'other than compensation paid by the United States or an agency thereof.' "

In response to Senator Couzens' objection to an exemption, Senator Reed explained his proposal as follows (75 Cong.Record, Part 9, p. 10411):

"The effect of my amendment is to put our tax law on substantially the same basis as that of other countries. For example, my understanding of the law is that if a British citizen were working here in the United States and lived here more than six months of the year we would tax him on his full earnings here just as Great Britain would tax an American living over there, but Great Britain does not tax her British citizen here if he lives here more than six months. This amendment would put our law on the same basis.

＊　　＊　　＊　　＊　　＊

"Mr. Reed. I was proposing to tax Americans who I think are unfairly exempted now, like officers of our military service and our Diplomatic Service, but I do not think the subject is worth long debate. I will withdraw my amendment and let the committee amendment be agreed to, and perhaps we can work out something better in conference."

The conference committee concurred in the views of Senator Reed as follows

(H.Conference Rep.No. 1492, 72d Cong., 1st Sess., p. 15 (1939–1) Cum.Bull. (Part 2) 539, 543)):

"Amendment No. 59: This amendment eliminates the exclusion from gross income, in the case of a non-resident individual citizen, of earned income from sources without the United States; and the House recedes with an amendment which restores the exclusion except as to amounts paid by the United States or any agency thereof, and makes clerical changes."

The House Ways and Means Committee recommended repeal of the exclusion provided by Section 116. H.Rep. 2333, 77th Cong., 2d Sess., pp. 50, 93 (1942–2 Cum.Bull. 372, 412, 443). The Senate Finance Committee recommended return of the exclusion but changed the tests from six months residence outside the United States to residence during the entire taxable year (S.Rep.No. 1631, 77 Cong., 2d Sess., p. 54 (1942–2 Cum.Bull. 504, 548–549) ):

"Under section 116(a) of the Internal Revenue Code a citizen of the United States residing outside the United States more than 6 months during the taxable year is exempt from tax on his earned income from sources outside of the United States, except in the case of income paid by the United States or any of its agencies. This provision of the present law has suffered considerable abuse in the case of persons absenting themselves from the United States for more than 6 months simply for tax-evasion purposes. To stop this abuse, the House bill repealed section 116(a).

"From cases brought to your committee's attention, the complete elimination of this section would work a hardship in the case of citizens of the United States who are bona fide residents of foreign countries. For example, many employees of American business in South America do not return to the United States for period of years.

Such persons are fully subject to the income tax of the foreign country of their residence. Your committee has adopted a provision which it is believed will effectively terminate the abuse of this section but at the same time will not unduly penalize our citizens who are bona fide residents of foreign countries. It provides that if such citizens establish that they are bona fide residents of a foreign country during the entire taxable year their earned income from sources without the United States will be exempt."

The Conference Committee adopted the views of the Senate. H.Conference Rep.No. 2586, 77th Cong., 2d Sess., p. 44 (1942–2 Cum.Bull. 701, 708).

Section 116(a) (2) was added to the Code by the Revenue Act of 1951, which includes the exception for amounts paid by the United States or any agency thereof. The report of the Finance Committee of the Senate shows (S.Rep. No. 781, 82d Cong., 1st Sess., pp. 52–53 (1951–2 Cum.Bull. 458, 495–496)):

"Section 116(a) of the Code exempts from income tax citizens of the United States who are bona fide residents of a foreign country with respect to income earned outside the United States, and disallows deductions chargeable against this income. This provision is intended both to encourage citizens to go abroad and to place them in an equal position with citizens of other countries going abroad who are not taxed by their own countries.

"However, the present law has two defects which section 321 of your committee's bill corrects. First, the exclusion is allowed only with respect to an 'entire taxable year' with respect to which the individual is a bona fide resident of the foreign country. Thus, exemption is denied an individual in his first year abroad unless he becomes a bona fide resident of the foreign country as of January 1. Section 321 of your committee's bill corrects this defect of present law by granting the exclusion with respect to 'an uninterrupted period which includes an entire taxable year' with respect to which an individual was a bona fide resident of a foreign country.

"In addition, the term 'bona fide' residence abroad has been construed quite strictly with the result that many persons who have gone abroad to work even for a relatively long period of time have been unable to meet the test of a 'bona fide resident' of a foreign country. Sometimes this has occurred because the nature of the individual's work is such as to make it difficult to establish a 'residence' in more widely accepted use of the term. On other occasions it has resulted from the fact that individuals have gone abroad only for a stated period of time. Examples of this are managers, technicians, and skilled workmen who are induced to go abroad for period of 18 to 36 months to complete specific projects. Your committee believes, in accord with the point 4 program, that it is particularly desirable to encourage men with technical knowledge to go abroad. As a result your committee has added a paragraph to section 116(a) of the Code providing that income earned abroad by a citizen of the United States who is present in a foreign country or countries for 17 out of 18 consecutive months is to be excluded from income, and that deductions chargeable to such income will be disallowed in computing his Federal income tax.

"These two changes made by your committee's bill are effective with respect to taxable years beginning after December 31, 1950."

The Conference Report stated (H. Conference Rep.No. 1213, 82d Cong., 1st Sess., p. 77 (1951–2 Cum.Bull. 622, 630)):

"Amendment No. 55: This amendment amends section 116(a) of the Internal Revenue Code so as to apply the exemption of earned income received from sources without the United States to (1) an individual citizen of the United States who has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year or (2) an individual citizen of the United States who during any period of 18 consecutive months is physically present in a foreign country or countries for a total of at least 510 full days in such period. Amounts paid by the United States or any agency thereof do not come within the provisions of this amendment."

Section 116(a) (2) was amended by Section 204(a) of the Technical Changes Act of 1953, c. 512, 67 Stat. 615.

The 1953 amendment retains both the exemption and the exclusion but limits the exemption to $20,000 for each taxable year.

Again, there was disagreement between the House Ways and Means Committee and the Senate Finance Committee. The House Committee recommended the repeal of the exemption provided by Section 116(a) (2) as follows (H.Rep.No.894, 83d Cong., 1st Sess., pp. 4–5 (1953–2 Cum.Bull. 508, 511)):

"Your committee deems it advisable to repeal section 116(a) (2) of the Internal Revenue Code, effective as to amounts received after April 14, 1953. Section 116(a) (2) excludes from income in the case of a citizen of the United States income earned abroad if such citizen was present in a period of 17 out of 18 consecutive months. While this paragraph was designed to encourage men with technical knowledge to go abroad in order to complete specific projects, it has been subject to a great deal of abuse. Some individuals with large earnings have seized upon the provisions as an

inducement to go abroad to perform services, which were customarily performed at home, for the primary purpose of avoiding the Federal income taxes. It has also been ascertained that in many cases Americans taking advantage of this provision do not pay any income tax even to the foreign country or countries in which the income is earned. This is because they are not in any particular foreign country long enough to establish a residence or because the foreign country in question does not impose any income tax."

The Senate's view to retain the exemption but to limit it in amount prevailed (S.Rep.No. 685, 83d Cong., 1st Sess., p. 5 (1953–2 Cum.Bull. 526, 528–529)):

"Your committee deems it advisable to amend section 116(a) (2) of the Internal Revenue Code, effective as to amounts received after December 31, 1952. Section 116(a) (2) excludes from income in the case of a citizen of the United States income earned abroad if such citizen was present in a foreign country or countries for a period of 17 out of 18 consecutive months. While this paragraph was designed to encourage men with technical knowledge to go abroad in order to complete specific projects, it has been subject to a great deal of abuse. Some individuals with large earnings have seized upon the provisions as an inducement to go abroad to perform services, which were customarily performed at home, for the primary purpose of avoiding the Federal income taxes. It has also been ascertained that in many cases Americans taking advantage of this provision do not pay any income tax even to foreign country or countries in which the income is earned. This is because they are not in any particular foreign country long enough to establish a residence or because the foreign country in question does not

impose any income tax. Under the House bill, section 116(a) (2) of the Internal Revenue Code is repealed effective as of April 15, 1953. Under your committee amendment, section 116(a) (2) is retained but is limited to $20,000 of earned income if the taxpayer is abroad for the full taxable year. While the committee amendment applies to taxable years ending after December 31, 1952, it will cover only such amounts as are received on or after January 1, 1953. Your committee believes that an outright repeal of section 116(a) (2) is not necessary to correct the reported abuses under existing law. There are many legitimate business arrangements which necessitate sending technical personnel abroad. A limitation on the amount of the earned income from foreign sources which is exempt will, in the opinion of your committee, be sufficient to correct the evils which have been brought to its attention."

■ It is to be observed from the foregoing legislative history, which has been taken from the government's brief, that the general purpose of the exemption was to encourage American citizens to go abroad for business purposes and to place them on an equal basis with citizens of other countries going abroad for the same purpose. Some of the other countries do not tax their citizens who go to a foreign country and reside for a certain period of time. These countries, or some of them, do tax Americans who live in their country for a certain period of time. The Congress reasoned that it was unfair for American citizens to pay income tax to their own government when working and residing in other countries if required to also pay income taxes to those countries. But the Congress soon discovered that the exemption without the exception excluded from the payment of income taxes many of the employees of the United States who did not pay income taxes to the country where they lived. Americans falling in this category prompted the exclusion in the exemption.

■ While Congress recognized the value of encouraging Americans with technical knowledge to go abroad to work on specific projects, it recognized the exemption had been abused by some Americans who went abroad to do work which could have been done as well in the United States, in order to avoid payment of income taxes. This abuse is what prompted the limitation of the exemption to $20,000 each taxable year which is contained in the 1953 Revenue Act but which is not applicable to the 1951 taxes involved in this suit. The exclusion clearly applies to compensation paid by the United States to its employees in settlement of obligations to its employees. But the exclusion does not apply to amounts paid by the United States to employees of private parties. This is the interpretation of the Internal Revenue Service of Section 116(a) (1) of the 1932 Revenue Act which is similar to Section 116(a) (2) of the 1939 Act as amended by the 1951 Act. I.T. 3679, 1944 Cum.Bull. 263, in interpreting the exception contained in Section 116(a) (1), stated:

"Citizens of the United States performing services in a foreign country for a company under contract with the War Department are not considered to be employees of the United States or any agency thereof, but are employees of the contractor. Accordingly, it is held that compensation received for services performed by United States citizens as employees of contracting firms engaged in operations in a foreign country does not constitute 'amounts paid by the United States or any agency thereof' within the meaning of Section 116(a) (1) of the Code, as amended."

A like result is reached when the United States pays an individual employee of the contractor. Rev.Rul. 54–483, 1954–2 Cum.Bull. 168. The Bureau of Internal Revenue ruled in 1936 that

fees received by consular agents of the United States were excludable from their income under Section 116(a) of the Revenue Act of 1934. I.T. 3006, XV-2 Cum.Bull. 160 (1936).

■ The language of the Act and the interpretative bulletins of the Bureau of Internal Revenue show, in the opinion of this Court, that the source of the amounts paid the taxpayer, and his status when paid, determine whether the payments come within the exclusion of the exemption. If the United States is the debtor and the amounts are paid by the United States in satisfaction of its debt to an employee of the United States, such payments fall within the exclusion of the exemption. If the United States is not the debtor but simply pays the amount which is in fact a debt of another debtor the amount so paid is within the exemption and without the exclusion in the exemption.

The Government relies on the case of Sverdrup v. Commissioner, 14 T.C. 859, a decision of the Tax Court written by Judge Johnson. In that case the taxpayer received $36,279.30 as his distributive share from four contracts between the partnership of which he was a member and the United States. The contracts were performed by the partnership and another party as a joint venture. This money was paid by the United States directly to the partnership along with expense money incurred by the partnership in work on government projects covered by the four contracts. The money was received by this taxpayer as his distributive share derived from the four contracts which the partnership made with the United States and which were performed by the partnership and another party under the joint venture agreement. The taxpayer was also paid $5,000 by the joint venture as additional compensation because of the nature of the work done by him in the performance of the four contracts and in the performance of other contracts pertaining to other projects not connected with the government. The sums were paid in the year 1942. The court held that the $36,279.30 was not excludable from petitioner's gross income under Section 116(a) of the Internal Revenue Code since it was an amount paid by the United States within the meaning of the exception to the exemption provided by that section, that payment to the partnership and distribution by the partnership to the partners was in law payment to the individual partners. The amount of $5,000 was excludable from the taxpayer's gross income because it was paid to the taxpayer by the joint venture "as additional compensation because of the nature of the work done by him in the performance of the contracts referred to above. This sum was not a part of the income of the partnership of which he was a member but was paid to him as an individual for services rendered to the joint venture. Accordingly, it is not to be considered as his distributive share of income either of the joint venture or the partnership. Wegener v. C. I. R., 41 B.T.A. 857; affirmed, 5 Cir., 1941, 119 F.2d 49, 27 A.F.T.R. 28. Therefore, contrary to respondent's determination, it was compensation paid to petitioner by the joint venture, not by the United States, regardless of whether the joint venture paid him out of funds it originally received from the United States * * *." The court called attention to the fact that the $5,000 was paid out of general funds of the joint venture which included amounts received from the United States and amounts received from a subcontractor with a private company.

In the opinion of this Court the reasoning in the Sverdrup case supports the view that plaintiff's wages for 1951 were not subject to income taxes because they were earned by him while working for the government of Ethiopia and paid to him by that government.

■ The Government contends that Congressional tax policy should be looked to in interpreting the exclusionary language in the exemption; that the legislative history of the exemption and exclusion shows that the Congressional

policy was to tax employees of the United States located in foreign countries who did not pay income taxes to the countries where they were located and that since plaintiff did not pay an income tax on wages earned in Ethiopia to the government of Ethiopia the language contained in the exclusion should be construed, if possible, so as to bring plaintiff within the exclusion. It is admitted that plaintiff did not pay any income taxes to the Empire of Ethiopia.

The Government's contention may have merit from an equity standpoint but in the opinion of the Court such a construction would do violence to the plain language of the exclusion.

The 1953 Act allows persons living in foreign countries to make as much as $20,000 in tax-free income in any taxable year, even though the taxpayer may be in the foreign country for the sole purpose of avoiding income taxes to the Government here, thus showing that even though Congress recognized that the exemption was abused by some American citizens it had sufficient merit to retain it as a part of the tax law.

Plaintiff concedes that he cannot deduct from his other income the miscellaneous deduction of $115 which he claimed to have expended for clothing in connection with his work in Ethiopia in 1951. His income tax return for 1951 shows that part of his income for the year was earned in the United States. On this part of his income a tax was admittedly due. Deductions claimed as allowable from his income earned outside the United States should be confined to that part of his income and should not have the effect of reducing the tax due on income earned in the United States. In holding that plaintiff is entitled to recover so much of his income tax as was withheld from his income in Ethiopia, the Court further holds that any part of the amount claimed as wrongfully withheld as is properly allocable to income earned in the United States is not recoverable.

The Court does not undertake to work out the mathematical problem which is presented by this situation, being of the opinion that the parties will have no difficulty in reaching agreement as to what the mathematical result should be.

Let an order be prepared in conformity with the views herein expressed.