**A. Joyce PAYNE, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 235, Docket 92–6017.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 5, 1992.

Decided Nov. 25, 1992.

Robert A. Gensburg, St. Johnsbury, Vt., for appellant.

David E. Carmack, Atty., Tax Div., Dept. of Justice, Washington, D.C. (James A. Bruton, Acting Asst. Atty. Gen., Gary R. Allen and Randolph L. Hutter, Attys., Tax Div., Dept. of Justice, Washington, D.C.; and Charles A. Caruso, U.S. Atty., Rutland, Vt., on the brief), for appellee.

Before: TIMBERS, VAN GRAAFEILAND, and McLAUGHLIN, Circuit Judges.

TIMBERS, Circuit Judge:

In this case of first impression at the appellate level, appellant A. Joyce Payne appeals from a summary judgment in favor of the United States and against Payne, entered in the District of Vermont, Albert W. Coffrin, *Senior District Judge*, 778 F.Supp. 804 (D.Vt.1991). The court held, as a matter of law, that the Panama Canal Commission ("PCC") was an agency of the United States Government, and therefore, wages paid to employees of that agency, including appellant's husband, are not excludable from taxable income under 26 U.S.C. § 911 (1988), which exempts from taxation foreign earned income of citizens living abroad, unless such income is received from the United States or an agency thereof.

On appeal, Payne challenges the summary judgment, claiming that the PCC is not an agency of the United States Government, and thus any income earned by employees of the PCC is exempt from taxation under § 911. She further claims that, even if the PCC does qualify as an agency of the United States, the income earned by its employees is not paid by the United States or an agency thereof, and therefore is exempt under § 911. Finally, she claims that summary judgment was improperly granted.

We reject all of Payne's claims on appeal and affirm the summary judgment in favor of the United States.

## I.

We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

In 1981 and 1982, appellant's husband was a United States citizen employed by the PCC. Appellant and her husband resided in Panama. The couple filed a joint United States income tax return for those years, excluding from their taxable income the amount Mr. Payne earned from the PCC. They claimed that this income was exempt under the Panama Canal Treaty of 1977 ("Treaty").

The Paynes also believed that, aside from the Treaty, the income also was exempt under § 911 of the Internal Revenue Code. This provision exempts from taxation foreign earned income of citizens residing abroad, unless the income is paid by the United States or *an agency thereof*. 26 U.S.C. § 911(b)(1)(B)(ii) (1988).

Mr. Payne died in 1985. On March 10, 1986, the IRS assessed $106,672.88 against the Paynes, representing unpaid taxes for the tax years 1981 and 1982. Of this sum, $33,934.90 represented back taxes and interest for 1982. On November 4, 1986, the Supreme Court held that the Treaty did not bar the United States from taxing wages paid to employees of the PCC. *O'Connor v. United States*, 479 U.S. 27 (1986) (Treaty only exempts PCC employees from Panamanian taxes). Appellant, nevertheless, did not pay the assessment. In February 1987, the IRS levied on her bank account, obtaining $32,630.49 in partial satisfaction of the assessment.

Appellant in April 1987 first commenced this action in the district court to recover the levied funds. The court granted summary judgment in appellant's favor as to the 1981 taxes, based on the IRS' failure to follow proper procedure in levying upon those funds. The court did not address the issue of whether the PCC wages were exempt from taxation under § 911. It dis-

missed the claim involving the 1982 taxes because of appellant's failure to exhaust her administrative remedies.

In April 1989, appellant, having exhausted her administrative remedies, commenced this action, once again seeking a refund of the levied funds, plus interest, for the 1982 taxes. The United States counterclaimed to reduce the assessment to a judgment. It moved for summary judgment because appellant admitted that she and her husband filed a joint tax return, making her personally liable for any deficiency on the return. Following *O'Connor*, the court held that the Treaty did not create a tax exemption. Appellant, however, claiming that *O'Connor* did not hold that the PCC was an "agency" under § 911, asserted that she qualified for that exemption from taxation.

The district court, after a hearing on the motion for summary judgment, held that, although *O'Connor* was not controlling on the issue of the § 911 exemption, the legislation which created the PCC and case law which discusses what constitutes an agency of the United States show that the PCC is an agency, thus creating United States income tax liability for employees of the PCC.

On appeal, appellant contends that she never had an opportunity to develop a factual record to show why the PCC is not an agency within the meaning of § 911, and that the order granting summary judgment was not appropriate.

## II.

It is common ground that a court shall grant summary judgment if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Thus, if the PCC is an agency, appellant is liable for her 1982 taxes as a matter of law, and summary judgment was appropriate.

### (A) *The PCC is an Agency of the United States*

■ No other court at the appellate level has addressed the issue of whether the PCC is an agency. *But see McCain v. Commissioner*, 81 T.C. 918 (1983) (Tax Court held that the PCC is an agency for purposes of § 911). Both parties here agree that the proper test for determining what constitutes an agency is one which measures the degree of control the government exercises over the entity involved. Factors to be examined include: (1) power of the United States to initiate and terminate; (2) effectuation of government purposes by the entity; (3) exclusion of private profit; and (4) limitation of employment to government-connected persons. *Kalinski v. Commissioner*, 528 F.2d 969, 973 (1 Cir. 1976); *Morse v. United States*, 443 F.2d 1185, 1188 (Ct.Cl.1971), *cert. denied*, 405 U.S. 989 (1972).

Appellant contends that the PCC fails the first part of the control test in that the United States neither created nor has the power to dissolve the PCC. Appellant claimed at oral argument before us that the district court ignored the Treaty. She asserted that it was the Treaty, a joint undertaking between the United States and Panama, which actually created the PCC and that the Treaty states that the PCC shall remain in existence through 1999. Panama Canal Treaty, art. III, ¶ 3(a). Thus, so her argument goes, the United States does not have the power to terminate the PCC.

■ This argument, however, requires a narrow reading of the terms "initiate" and "terminate." Although the Treaty *required* the United States to create the PCC, the plain language of the Treaty refers to it as "a United States Government agency ... which shall be constituted by and in conformity with the laws of the United States of America." Treaty, art. III, ¶ 3. The PCC was created by legislation enacted by the United States Congress which established the laws and procedures under which the PCC operates. 22 U.S.C. §§ 3601–3872 (1988 & Supp.1992).

The language of the legislation makes it clear that the PCC is an agency in the Executive Branch of the United States Government, operating under the authority of

the President as exercised through the Secretary of Defense. 22 U.S.C. § 3611 (1988). The Secretary of Defense can direct how United States nationals on the supervisory Board of the PCC shall vote. 22 U.S.C. § 3612(a) (1988). The legislation further requires that at least five of the nine Board members be United States nationals. Since the majority of the Board are United States nationals, the Secretary of Defense effectively controls the outcome of any decision of the Board. Even though the United States cannot technically terminate the PCC, it can terminate any decision or action of the PCC.

Further, it is the President who, with the advice and consent of the Senate, shall appoint the United States nationals who are members of the PCC supervisory Board. This gives the United States control over the appointment of the majority of the Board. And although Panamanians propose their nationals for the Board, the United States actually makes the appointments and controls which of the proposed members are selected. Finally, regardless of the nationality of a Board member, it is the President who appoints and can terminate the administrator and the deputy administrator. 22 U.S.C. § 3613 (1988). Based on these factors, even if the Treaty technically may have created the PCC, the United States has tremendous control over initiating and terminating the membership and policies of the PCC.

The next question for determining if the PCC is an agency is whether it was established to effectuate government purposes. The plain language of the Treaty is convincing. It states that "[T]he United States of America shall ... carry out its responsibilities [under the Treaty] by means of a United States Government agency called the Panama Canal Commission...." Treaty, art. III, ¶ 3.

This language shows that the PCC was established to effectuate the government's responsibilities and duties under the Treaty, and not, as appellant asserts, to act solely as a managing agent and trainer for Panamanians before the final transfer of the Panama Canal. The United States, in operating the Canal, is performing the governmental exercise of the power of Congress to regulate commerce; it is not performing a purely proprietary or business activity for the government. *Rogers v. Graves,* 299 U.S. 401, 406 (1937), *overruled on other grounds by Graves v. New York,* 306 U.S. 466 (1939); *McGehee v. Panama Canal Comm'n,* 872 F.2d 1213, 1218 (5 Cir.1989).

The third element which establishes the United States' control over an agency is whether it generates government revenue as opposed to private profits. The statute, 22 U.S.C. § 3712(c)(1) (1988), requires the PCC to deposit all of its receipts in the Panama Canal Revolving Fund, a part of the United States Treasury. Such funds cannot be expended without authorization by law. Even if the PCC operates at a profit, the assets can be used only to carry out the purposes of the PCC and cannot be spent without specific authorization of law.

Appellant asserts that payments made by the PCC to the Republic of Panama, as agreed to under the Treaty for use of its natural resources, constitute a private profit. Appellant says that a private profit is earned unless all revenues are for the benefit of the United States. Aside from the fact that the Republic of Panama is not a private entity, we reject this assertion because the payments to Panama are for *government* services and there is no evidence of private profit being generated by the PCC.

The final factor in determining whether the PCC is an agency is whether its membership is limited to government-connected persons. There is no specific definition of who is "government-connected." Appellant asserts that, since there are Panamanians on the Board who are employed by the PCC (with their number to increase over the term of the PCC), such employees cannot be government-connected.

In making this assertion, appellant ignores the fact that the PCC employees are subject to the same duties and responsibilities as federal employees, and that the PCC legislation creates a code of conduct which is substantially similar to the laws applica-

ble to federal employees. In fact, the President established the Panama Canal Board of Appeals, which makes the "final and conclusive" determination for employee grievances about job classification and pay rates. 22 U.S.C. §§ 3660–3662 (1988). Further, it is the Federal Labor Relations Authority which handles disputes between the PCC and the employees' union. *Panama Canal Comm'n v. Federal Labor Relations Auth.*, 867 F.2d 905 (5 Cir.1989). Moreover, United States citizen employees of the PCC, under certain conditions, are eligible for federal benefits such as civil service retirement, disability, and death benefits. 22 U.S.C. § 3649 (1988). These factors provide sufficient evidence of a government connection to the employees of the PCC. The PCC thus complies with the final prong of the test for control.

Appellant compares the PCC to the Trust Territory of the Pacific Islands ("TTPI"), which the Ninth Circuit held was not an agency. *McComish v. Commissioner*, 580 F.2d 1323 (9 Cir.1978). *But see Groves v. United States*, 533 F.2d 1376 (5 Cir.), *cert. denied*, 429 U.S. 1000 (1976) (holding that the TTPI is an agency). Even if we were to agree that the TTPI is not an agency, it is sufficiently different in character to distinguish it from the PCC. The TTPI is a quasi-sovereign territory with its own tripartite government. *McComish, supra*, 580 F.2d at 1329. Unlike the TTPI, the PCC is not a sovereign or even quasi-sovereign body; it is subject to the laws of the United States. This analogy therefore is not dispositive.

We hold that the PCC is under the control of the United States and must be considered an agency under § 911. Employees of the PCC are not exempt from paying United States income taxes.

(B) *Appellant's Income Was Paid by an Agency of the United States*

Appellant also claims that, even if the PCC is an agency, her husband was not paid by that agency. She bases this on the fact that the PCC funds, which paid the salary, came from revenues from the Canal's operation. Since the funds did not

come directly from the United States government, she says that it was not the United States (or an agency thereof) that paid her husband.

■ We reject this claim based on legal precedent in this area. Whenever an employee of the United States or any agency thereof receives wages from such an employer, the source of the wages is irrelevant; the employee is not exempt from paying taxes under § 911. *C.I.R. v. Mooneyhan*, 404 F.2d 522, 527 (6 Cir.1968) (although a foreign country was the source of funds, as an employee of the United States one is paid by an agency of the United States and cannot seek § 911 exemption), *cert. denied*, 394 U.S. 1001 (1969). Here, it was the PCC, an agency of the United States, which paid Mr. Payne's wages. The Treaty itself refers to the United States as the employer of PCC personnel. Congress regulates the wages for PCC employees. 22 U.S.C. §§ 3655–57, 3665 (1988). It is irrelevant that the funds for these wages did not come directly out of United States taxpayers' pockets.

Appellant cites *Krichbaum v. United States*, 138 F.Supp. 515 (E.D.Tenn.1956), for the proposition that the § 911 exemption applies when a foreign government's funds pay a United States agency employee's salary. The instant case is readily distinguishable from *Krichbaum*. In *Krichbaum*, the foreign country was responsible for providing the employee's salary. Here, it is the United States which ultimately is responsible for paying the employees of the PCC.

(C) *Summary Judgment Was Properly Granted*

■ Appellant also asserts that summary judgment was not appropriate here because the Government did not file an affidavit proving that the amount appellant owed in taxes was calculated correctly. Appellant cites Fed.R.Civ.P. 56(c) in support of her assertion that the Government should have filed an affidavit to show that there is no genuine issue of material fact. Appellant neglects to mention Fed.R.Civ.P. 56(e) which provides:

"When a motion for summary judgment is made and supported as provided in this

rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading[s], but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."

It is the *adverse* party to a motion for summary judgment who bears the burden of providing affidavits which set forth specific facts showing that there is a genuine issue for trial. Here, appellant made only a blanket denial in response to the Government's claim for the amount of taxes owed. It was the appellant who did not meet her burden in proving there was a genuine issue of material fact. Summary judgment accordingly was properly granted.

### III.

To summarize:

We hold that the district court properly held that the PCC is an agency under the test of control, and that it is the PCC, acting in its role as an agency of the Government, which paid the salary of its employees. The income earned as an employee of the agency is not exempt under § 911. There being no genuine issue of material fact, summary judgment was appropriate.

Affirmed.