**In re Leonard A. NADYBOL, Debtor.**

**No. 99–10726–DK.**

United States Bankruptcy Court,
D. Maryland,
at Greenbelt.

Sept. 26, 2000.

Christopher Rizek, Caplin & Drysdale, Chtd., Washington, D.C., for debtor.

Angelo Frattarelli, U.S. Department of Justice, for United States of America.

## MEMORANDUM OF DECISION

DUNCAN W. KEIR, Bankruptcy Judge.

Before the court are cross motions for summary judgment on debtor's objection to the proof of claim filed by United States. The proof of claim asserts a debt owed for nonpayment of federal income taxes for tax years 1984 through 1990, at which time debtor was working for the Army Recreation Machine Fund while living in Germany. Debtor asserts in his objection that no taxes are due pursuant to 26 U.S.C. § 911(a), which allows qualified individuals to exclude "foreign earned income" from gross income. The court has considered the pleadings and the evidence and has determined that a hearing would not aid in the decisional process. The court shall grant summary judgment in favor of the United States, and deny the motion filed by the debtor.

### Facts [1]

Debtor is a United States citizen. While he maintained his United States citizen-ship over the period at issue, he also owned a home in Germany, had a German spouse, obtained a work permit in Germany, and achieved German residency status.

During the tax years in question, 1983–1990, debtor was employed by the Army Recreation Machine Fund, ("ARMP"). According to the stipulated facts, ARMP was formed in 1983 to place slot or "gaming" machines on certain military bases. The U.S. Department of the Army created ARMP as a non-appropriated fund instrumentality ("NAFI") [2]. Army oversight of ARMP was provided through the Army Community Family and Support Center ("ACFSC"). The mission statement of ARMP is: "to provide a highly controlled gaming operation designed to provide recreation for soldiers and family members who are stationed overseas while generating revenue for the morale, welfare, and recreation ["MWR"] programs and projects." Stipulated Facts, Exhibit 1, Memorandum from ACFSC to General Manager, Army Recreation Machine Program. Debtor's job was that of a buyer in the purchasing office.

Debtor was paid biweekly in U.S. currency over his period of employment with ARMP. Although his paychecks were generated by the U.S. Army non-appropriated fund payroll office, ARMP reimbursed the Army for debtor's salary. As part of his job, debtor was issued a U.S. Army, Europe, civilian employee identification card that entitled him to use base post and health facilities as well as other services.

### Standard

Summary judgment is appropriate where there is no genuine dispute as to any material fact and the moving party is

---

1. The facts, unless stated otherwise in the text of this opinion, are taken from the "Stipulation of Facts," and the attached exhibits, found at paper 42 of debtor's case file.

2. A NAFI is an entity created to administer non-appropriated funds. Non-appropriated funds, in turn, are funds that have not been appropriated by Congress, but are generated instead by "participation of [military] personnel and others in [military] religious, morale, welfare, and recreation programs such as base exchanges, theaters, book departments, and restaurants." *Kalinski v. Commissioner of Internal Revenue*, 528 F.2d 969, 971 n. 7 (1st Cir.1976).

entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). If summary judgment is to be denied, there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment may be granted. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

## Discussion

Under IRC § 911(a), "citizens or residents of the United States living abroad" may elect, under certain circumstances, to exclude "foreign earned income" from the calculation of gross income. Section 911(b)(1)(A) defines "foreign earned income" as "the amount received by [the taxpayer] from sources within a foreign country or countries which constitute earned income attributable to services performed by [the taxpayer] during a period [described in further subsections]."

■ Here, the parties agree that the only potential bar to debtor's use of the foreign income exclusion is IRC § 911(b)(1)(B)(ii). Under section 911(b)(1)(B)(ii), an individual may *not* include in the calculation of foreign earned income, any income "paid by the United States or an agency thereof to an employee of the United States or agency thereof." The parties have stipulated that defendant was an employee of ARMP during the relevant time period. The parties disagree, however, as to whether ARMP is an "agency" of the United States, for purposes of IRC § 911(a). If the court determines that ARMP is a section 911(a) agency, debtor's objection to the claim filed by the United States must fail.

■ The income tax regulations expand on IRC § 911(b)(1)(B)(ii) by exempting from the definition of foreign earned income the income earned working for "any U.S. government agency *or instrumentality*." Treas. Reg. § 1.911–1(a) (emphasis supplied). Debtor has stipulated that ARMP is a "non-appropriated fund instrumentality" of the United States Army. However, at least one court has found that equating "agency" with "instrumentality" is:

> not particularly helpful, for the Commissioner has ruled that the American Red Cross—held to be an instrumentality of the Government for many purposes, *see e.g., Gradall v. United States*, 161 Ct.Cl. 714, 329 F.2d 960, 964 (1963)—is not an agency of the United States within the meaning of sec. 911(a). Rev. Rul. 60–36, 1960–2 C.B. 279.

*Donaldson v. Commissioner*, 51 T.C. 830, 837 n. 5, 1969 WL 1555 (1969). Accordingly, that ARMP is a NAFI is not dispositive of its status as an agency under IRC § 911(a).

■ Courts that have addressed the issue "agency" in the section 911(a) context have focused on the degree of control the government exercises over the entity. *See, e.g., Payne v. United States*, 980 F.2d 148, 150 (2nd Cir.1992); *Kalinski v. Commissioner of Internal Rev.*, 528 F.2d 969, 973 (1st Cir.1976); *Morse v. United States*, 195 Ct.Cl. 1, 443 F.2d 1185, 1188 (1971). To that end, courts consider, (and the parties to this action have briefed), the following factors:

1. power of the United States to initiate and terminate the entity;

2. effectuation of government purposes by the entity;

3. exclusion of private profit; and

4. limitation of employment or membership to government-connected persons.

*Payne* at 150; *see also, Morse* at 1188.[3]

In its motion for summary judgment, debtor concedes that ARMP was established by the United States Army, and that the Army could terminate it. Accordingly, there is no dispute as to the first factor set forth above.

 As to the second factor, debtor cites dictum from the *Morse* court for the proposition that only if the governmental purpose effectuated by ARMP is "essential" or "critical," can there be a finding that it is a section 911(a) agency.[4] Debtor misconstrues *Morse*. As framed by that court, the second "element of control" that identifies an "agency" is the "effectuation of Government purposes *paramount* over those of the organizers and members." *Morse* at 1188. Nevertheless, as shown below, even accepting debtor's characterization, application of the second factor to the stipulated facts demonstrates governmental control of ARMP.

Debtor quotes subsections of Army Regulation ("AR") 215–1 which indicate that the Army maintains various Morale, Welfare and Recreation ("MWR") programs for the benefit of members of the armed services. Debtor maintains that such programs were categorized into 4 declining levels of importance as Category A, "Mission Sustaining Activities"; Category B, "Basic Community Support"; Category C, "Enhanced Community Support"; and Category D, "Business activities" AR 215–1, §§ 2–9 through 2–12. Debtor quotes the subsections above as indicating that ARMP falls into Category D, which, due to its income generating capabilities is "considered less essential from the perspective of the military mission, but still highly desirable."

Debtor has not provided the court with a copy of the language upon which he relies, and such language does not appear to be part of the current version of AR 215–1.[5] Under the present structure of the regulation, the Army considers every NAFI to be "integral and essential to the conduct of the military mission." AR 215–1, § 3.1(b)(9)(1998). This tenant was echoed by Brigadier General Craig B. Whelden, Commander of the Army Community and Family Support Center in recent congressional testimony:

> Readiness, retention, and quality of life (QOL) are inseparable. The MWR and Family programs positively impact soldier and family QOL and yield soldiers more ready and able to perform the military missions whether stationed at home or deployed.

*Statement Before the Morale, Welfare and Recreation Panel of the House Panel Comm. on Armed Servs.*, 106th Cong., 1st Sess. (1999), 1999 WL 8086395.

The court finds that either version of AR 215–1 supports a finding that ARMP serves "Governmental purposes paramount

---

3. The *Morse* court set forth the test with some additional elaboration as to the types of entities it believed were *not* "agencies":

> The elements of control, with power to initiate and terminate, with effectuation of Government purposes paramount over those of organizers and members, the exclusion of private profit, and the limitation of membership to Government-connected persons, serve to identify an 'agency.' This excludes such institutions as national banks having overseas branches, which, although chartered by the Government and regulated thereby, exist to earn a profit by serving the needs of the public generally. *Morse*, 443 F.2d at 1188 (internal citations omitted).

4. Following the language quoted in the previous footnote, the *Morse* court stated that

to succeed in their case, that plaintiff/taxpayers "would have to show that the [entity taxpayers worked for] was 'not established to provide essential morale and recreational facilities and services for personnel of an installation.'" *Morse*, 443 F.2d at 1188 (internal citations omitted).

5. As this discussed in the body of this opinion, even as quoted by debtor, AR 215–1 does not (or did not at the time debtor was working for ARMP) support the proposition that the ARMP is not 'essential.' The current version of AR–215–1 can be found at:

> http://books.usapa.*belvoir.army.mil:80/cgi-bin/bookmgr/books/r215_1.

over those of [its] organizers and members." *Morse*, 443 F.2d at 1188. That ARMP may be "less essential" when compared to other MWR categories is of no moment as to the ultimate issue, whether sufficient government control exists such that ARMP is an IRC § 911(a) "agency".

Debtor also concedes the third factor: that ARMP is operated to the exclusion of private profit. Indeed, as revealed by the Stipulated Facts in this case, excess ARMP funds (funds left over after slot machine payout and entity operating expenses such as payment of employee salary and benefits) not only do not adhere to the benefit of ARMP, but instead are used to promote *other* MWR programs for the benefit of United States soldiers and their families. Stipulated Facts, ¶¶ 20–21. Moreover, under the regulations governing its existence, ARMP funds are subject to substantial Army control. Section 8.4.B of AR 215–1 restricts machine location, machine payout, the percentage of funds that ARMP may retain, how cash is collected, how cash is deposited, how access to the machines is controlled, and how the income generated is distributed. ARMP is also subject to an annual audit of its finances by the Army. AR 215–1, § 8.4.B(18)(C).

The final factor in determining whether ARMP is an agency under IRC § 911(a) is whether its membership is limited to "government-connected" persons. Debtor argues that since foreign nationals may use the slot machines under certain circumstances, that the membership was not limited to "government-connected persons." [6]

Debtor's argument is similar to that presented to the court in *Payne v. United States*, 980 F.2d 148, 150 (2nd Cir.1992). That case involved whether the Panama Canal Commission ("PCC") was an agency under IRC § 911(a). The PCC was created pursuant to an act of Congress to administer the Panama Canal under a treaty between the United States and Panama. Debtor was a United States citizen employee of the PCC who lived in Panama. Debtor argued that the PCC was not an agency because it did not limit membership to government-connected persons. Notably, certain members of the PCC board were, as required by the enacting legislation, Panamanians. The Second Circuit did not find this fact dispositive on the issue of whether the members of the PCC were "government connected":

> In making this assertion, appellant ignores the fact that the PCC employees are subject to the same duties and responsibilities as federal employees, and that the PCC legislation creates a code of conduct which is substantially similar to the laws applicable to federal employees. In fact, the President established the Panama Canal Board of Appeals, which makes the "final and conclusive" determination for employee grievances about job classification and pay rates. 22 U.S.C. §§ 3660–3662 (1988). Further, it is the Federal Labor Relations Authority which handles disputes between the PCC and the employees' union. *Panama Canal Comm'n v. Federal Labor Relations Auth.*, 867 F.2d 905 (5th Cir.1989). Moreover, United States citizen employees of the PCC, under certain conditions, are eligible for federal benefits such as civil service retirement, disability, and death benefits. 22 U.S.C. § 3649 (1988). These factors provide sufficient evidence of a government connection to the employees of the PCC. The PCC thus complies with the final prong of the test for control.

*Payne v. United States*, 980 F.2d at 151–52.

---

**6.** Through its regulations, the Army strictly controls who may use ARMP slot machines. As a practical matter, participation by foreign nationals is limited because the machines may only be installed on certain Army "Moral, Welfare and Recreation activities," AR 215–1, § 8.4.B(7), and because MWR activities are generally on military bases. Army regulations further restrict use by foreign nationals if such individuals would not be able to use the machines under local law, AR 215–1, § 8.4.B(8)(b)(1), and if such individuals are under the age of 18, AR 215–1, § 8.4.B(8)(b)(2).

Similar to the employees in *Payne*, ARMP employees are subject to standards of conduct established by Army regulations, and fall under the supervision of the ACFSC Commander. Stipulated Facts, Exhibit 1, ¶ 4d, g; Exhibit 2, AR 215–2, § 7–2a; AR 215–1, § 3.1b(6). Further, *all* Army NAFIs "operate under the authority of the U.S. Government" and "[a]re administered by military or civilian personnel acting in an official capacity." AR 215–1, §§ 3.1a(1), b(1). The court concludes, as did the court in *Payne*, that there is sufficient evidence of government connection in this case to satisfy the final element of the control test despite the fact that foreign nationals could use the gaming machines under some circumstances. *Accord, Kalinski, supra*, 528 F.2d at 973–74 (finding government connection where the civilian employees of the entity under consideration were "subject to military law including but not limited to applicable rules, regulations, and directives issued by competent U.S. military authorities, to the same extent … as … any U.S. citizen employees paid from appropriated funds….") (internal quotations omitted).

Having viewed the stipulated facts in a light most favorable to the debtor, the court concludes that the United States Army exercised pervasive financial and supervisory control over ARMP and caused it to accomplish Army purposes, on a nonprofit basis, limited to persons directly or indirectly affiliated with the Army. Accordingly, ARMP was an agency of the United States for purposes of 26 U.S.C. § 911(a). *Payne*, 980 F.2d at 152; *Kalinski*, 528 F.2d at 974. As a consequence, debtor's objection to the claim filed by the United States must be denied. A separate order shall issue.